Mrs. Robert B. (Dorothy) Allen, *as Guardian, Respondent,* v. David B. Mattoon, *Appellant,* Delbert E. Thom *et al., Respondents.*

Harold F. Cambas *et al., Respondents,* v. David B. Mattoon *et al., Appellants,* Delbert Thom *et al., Respondents.*

Clarence J. Wick *et al., Respondents,* v. David B. Mattoon *et al., Appellants,* Delbert Thom *et al., Respondents.*

*Hugh B. Horton* (of *Horton, Wilkins & Horton*), for appellant.

*Charles T. Morbeck,* for respondent Allen.

*Robert S. Day* (of *Peterson, Taylor & Day*), for respondents Cambas and Wick.

*Dean W. Loney* (of *Loney, Westland & Raekes*), for respondents Thom.

Green, J.—Three separate actions were brought by the plaintiffs, Harold F., Hermoine C. and Penny Cambas, Clarence J. and Doris Wick, and Dorothy Allen, guardian of

Michael Braswell, a minor, against the defendants, David B. Mattoon and Meta C. Thom, and their respective spouses, for damages arising from a serious automobile collision. In each of these actions, Mattoon and Thom denied the allegations of negligence against them; Mattoon asserted a cross claim against Thom for the damages sustained by him. Upon motion of Mattoon, the three actions were consolidated for trial. A jury returned a verdict in favor of all plaintiffs against Mattoon and exonerated Thom. From a judgment entered upon this verdict, Mattoon appeals.

Errors are directed to (1) the denial of Mattoon's motion in limine to exclude evidence that he was involved in a subsequent collision in which another person lost her life; (2) the denial of several motions for mistrial; (3) the denial of a motion for new trial; and (4) certain instructions given and refused.

The court found that plaintiffs Cambas and Wick were without fault and directed a verdict against either Mattoon or Thom, or both. Because Michael Braswell was a guest passenger in the Mattoon car, the jury was instructed they must find Mattoon grossly negligent before Braswell could recover against him.

The collision occurred on November 17, 1969, about 3 p.m., on United States Highway 12, a 2-lane highway, near Pasco. The day was clear and the pavement was dry. Thom was driving a special education student from Pasco to the student's home in Wallula. She drove out "A" Street towards its intersection with Highway 12 which leads east from Pasco over the Snake River bridge to Wallula. As she approached Highway 12 in the merge lane, she stopped at a "Yield—Right-of-Way" sign to allow a panel truck traveling east on Highway 12 to clear the intersection. She then proceeded further into the merge lane, stopped and looked for eastbound traffic and accelerated her car into the eastbound lane of traffic on Highway 12. After she had traveled a short distance she heard gravel hitting the side of her car

and upon looking to her right saw Mattoon passing her on the shoulder of the road; she observed Linda Braswell, mother of Michael, in the front seat and heard her screaming. Thereafter, Mattoon reentered the highway in front of her and proceeded at an angle across the highway where he collided with a car occupied by plaintiffs Cambas and Wick traveling in the opposite direction.

Officer Gary Trunkey of the State Patrol investigated the accident. He testified the physical markings showed that the Mattoon car, a Volkswagen fastback, entered the graveled shoulder of the highway about 2 feet west of a "litter" sign; that it was 374 feet east from the end of the dotted or skip line separating the merge and main traffic lanes to the "litter" sign; that Mattoon traveled 213 feet on the shoulder before reentering the highway; and upon reentry Mattoon traveled 138 feet, measured at an angle to the point of collision. Officer Trunkey also testified he found no skid marks on the highway or on the graveled shoulder and that Mattoon could not have entered the shoulder of the road at an earlier point without hitting the "litter" sign. As a result of the collision, Linda Braswell and her small baby were killed and the other occupants in both cars sustained injuries.

There is no significant dispute about the foregoing facts. The dispute between Thom and Mattoon arises over the cause of Mattoon's maneuvers.

Thom contends that after the panel truck had passed her she proceeded about 66 feet into the merge lane and just before entering the eastbound lane of Highway 12, stopped, looked and saw Mattoon's car at a point parallel to the Pasco substation. This was 1,400 feet west of her observation point—a quarter of a mile. She then entered the highway, did not look to the rear again, attained a speed of 50 miles per hour by the time she reached the "litter" sign and then heard the gravel from Mattoon's car strike her car as she saw him on the shoulder of the road. The "litter" sign

was 557 feet from where she entered the highway[1] and about 823 feet east of the "A" Street stop sign. She testified the Mattoon car was "flying" at a high rate of speed. Based upon this and other testimony, Thom contends the Mattoon car could have stopped within 130 feet if he had been traveling 60 miles per hour; and that the accident was caused by Mattoon's excessive speed, the failure to maintain a proper lookout, or his attempt to make an illegal pass on the shoulder of the road.

On the other hand, Mattoon contends he was traveling about 55 miles per hour,[2] 10 to 12 car lengths behind the panel truck as it passed the intersection; at that time he first observed Thom in the merge lane traveling about 20 miles per hour and appeared to be decelerating to let him pass; he did not slow down; at the point near where the merge lane ends, the Thom car, then traveling about 5 miles per hour, suddenly accelerated into his traffic lane about four car lengths ahead of him; and at that time, in order to avoid colliding with her, he pulled to his right. Mattoon has no memory of what occurred thereafter. The record shows that immediately after the collision Mattoon was without any recollection of the immediate events surrounding it. In fact, he was unconscious for almost 2 weeks. It was only by hypnosis, approximately 3 weeks before trial, that he remembered the facts just outlined. Mattoon contends the collision occurred because Thom failed to yield the right-of-way to him by suddenly pulling in front of him, creating an emergency requiring him to take evasive action in order to avoid hitting her from the rear.

---

[1] The precise point where Thom entered the eastbound lane is in dispute. Mrs. Thom testified it was 66 feet from the "yield" sign (St. 747). Mattoon testified she entered the highway at the point where the merge lane and the highway became one lane (St. 871, 877-79, 896), a point some distance beyond where the dotted or skip line ends.

[2] It was shown that upon deposition, he testified he was traveling 65 miles per hour, instead of the 55 miles per hour. He explained the difference by stating that he was traveling well below the speed limit and had earlier believed the speed limit was 70 miles per hour, but after deposition learned it was 60 miles per hour.

These contradictory positions are complicated by the testimony of two eyewitnesses. Donald Smith was in the westbound land of Highway 12, slowing down as he was approaching the left-turn lane into "A" Street. He observed the Thom car at the end of the skip or dotted line separating the merge and eastbound lanes of Highway 12; Mattoon was parallel to him in the eastbound lane. He estimated Thom's speed at 35 miles per hour and Mattoon's speed at 55 to 60 miles per hour. Smith testified that he was positive the Mattoon car passed him before he got to the "A" Street intersection; that while he did not see Thom pull into the highway, it seems it was right before the "litter" sign; that he saw the Mattoon car go around Thom on the shoulder of the road near the "litter" sign; that what caused him to look back was the speed of the Mattoon car and his belief Thom was going to pull onto the highway. Terry Francisco was traveling some distance behind Smith and noticed the Thom and Mattoon cars as she met them just west of the "litter" sign. Thom was in the eastbound lane and Mattoon was near the fog line some distance behind her "getting closer, like he was going to go around." She estimated that Mattoon was traveling 55 to 60 miles per hour, twice as fast as Thom. She did not see Thom enter the highway. Francisco's markings on exhibit 59-M indicate Thom was at the point where the merge lane and the highway had become one and that Mattoon was at a point where this had not yet occurred.

Both Thom and Mattoon, working with their version of the facts, claim the other was negligent. Regardless of how we might have decided the issue, we believe a jury question on liability was created by the evidence.

First, Mattoon assigns error to the court's denial of his motion in limine to prevent the other parties from showing that about 10 months after the instant collision Mattoon, while driving a car, was involved in another collision in which another person lost her life; and the denial of motions for mistrial and new trial based thereon. In support of

the motion for exclusion, Mattoon contended that, since he was not injured in that accident, the only purpose of admitting the evidence would be to prejudice his position before the jury on the issue of liability. Urging a denial of this motion, counsel for Thom said:

> I would like to comment in connection with this second accident. He was driving another car within the space of nine or ten months after this accident. He is suing us for $150,000 for his injuries in this accident. He did the same thing, identically, lost control of his car, went across the road, or across the divider, and struck another car head-on, and the force of the impact was sufficient to kill the woman in this car, the same as it killed the woman in the present accident, but he now says that all of the injuries that he presently sustained—and he has serious injuries —all are a result of this first accident, and that he went through the second accident in which a woman was killed with a force, an identical force, but wasn't injured this time, and we believe this affects his credibility and we are entitled to show it, and this is material from the standpoint of what has happened to him in the intermediate period.

The court ruled the evidence admissible and said:

> The severity of the impact is very material to your ability to prove that all injuries referred to the first accident and not the second accident, and how you can eliminate the death of a companion in a car in an effort to show the severity of the impact I don't know.
>
> It is regrettable that someone died in the second accident but isn't that as meaningful in regard to the severity of the impact as is a bent fender or the amount of dollars necessary to repair the vehicle? I don't see how you can separate that.

The subsequent accident was first made known to the jury in Thom's opening argument:

> Mattoon is seriously injured, and I think Mr. Mattoon will tell you this, that his condition today is the result of this accident. The evidence will show, however, that about nine or ten months after this accident Mr. Mattoon was in a very, very serious accident again in Olympia at which time the impact was severe enough to kill a woman passenger, and not only severe enough to kill her

but to kill the eight month fetus inside of her, and yet he claims that that accident didn't cause any injury, this accident was the only one that brought about his condition.

Mattoon immediately moved for mistrial asserting, as he did on the original motion, that the use of the evidence was for the sole purpose of prejudicing the jury against him. This motion was denied.

During the trial, Thom presented no medical evidence that the second accident caused or contributed to Mattoon's present condition. References by Thom to the fact that the second accident contributed to Mattoon's present condition are illustrated by a portion of her cross-examination of Mattoon:

Q You are telling us that all your injuries that you have today are the result of this head-on collision, although after this head-on collision you had another head-on collision in Olympia, didn't you?

A No, I didn't.

Q Didn't your car strike another car, go across—just identical with this—your car went across in the other lane of travel and was struck by another car coming the other way?

A No, Mr. Loney, that's not true.

Q Which way was the car coming that struck you?

A It was going the opposite direction my car was going.

Q You were coming this way and the other car was going this way (indicating)?

A I was coming around a wide curve on a rain-slick road. The rear end of my car went over the center line and my car came to a stop. The car that was going in the opposite direction came around this wide curve and struck the rear end of my car, which was over the center line by about two feet.

Q And it resulted in serious injuries—it killed the girl that was riding with you, it killed the child that she was carrying in her womb, and put you in the hospital and the other girl in the hospital, didn't it?

A No, it didn't, Mr. Loney.

Q It didn't put you in the hospital?

A No.

The testimony showed that Mattoon was not hospitalized, but was given first aid for a superficial cut on his forehead which was covered by a band-aid and released.

It was only when counsel for plaintiffs Cambas and Wick cross-examined Mattoon's physician that *any* medical testimony was elicited indicating the second accident may have aggravated Mattoon's prior injuries:

Q Doctor, you may answer that question.

A You are stating basically that Mr. Mattoon some time after I last saw him was in a fairly substantial accident. Any of these accidents never do them any good, and I certainly don't think that it would have done him any good.

Q It wouldn't have helped him any, would it?

A Of course not. I don't know what else we can say at this point.

Q Let's say it wouldn't have improved his condition in any way?

A Well, of course not.

Q And wouldn't you say that on the basis of what you know—you haven't seen him, I appreciate that, Doctor—but in view of what the severity of this condition was, that I just told you, to assume these facts, there is a fair medical probability that his condition was at least aggravated by it?

A Yes. It would probably be. The neurological condition would be more apt to be aggravated, but here again his condition—it may well be aggravated. I don't know what else we can say at this point.

This testimony is vague and of little or no value to a jury in determining the extent to which the second accident may have contributed to Mattoon's present condition. Furthermore, it came from counsel for plaintiffs who had no concern with the extent of Mattoon's injuries because Mattoon's cross claim was only against Thom. It appears to have been an effort by plaintiffs to fill a gap in the record by attempting to link the second accident to Mattoon's present condition and thus conform to Thom's representations in support of the denial of the motion for exclusion.

Closing arguments reveal no reference by Thom to the

second accident and death. The only reference is by Mattoon's attorney who attempts to explain away the effect of the admission of the second accident.

Following the verdict for plaintiffs, Mattoon moved for new trial grounded in part upon the admission of the reference to the second accident. In the course of denying the motion for new trial, the court said:

> I have spent considerable time thinking about this case. I am not happy with the way it came in, and it is quite true that had I known what the evidence offered in regard to the severity of the impact of the second accident had to do with the injuries of Mr. Mattoon, that what was offered to make that connection was of course so fragmentary and sparse, in retrospect I would have granted Mr. Horton's motion. No question about it.
>
> In other words, if the trial had been offered as an offer of proof as to what the connection was it would not have satisifed [sic] me, so perhaps it is a reflection that hindsight is better than any other evaluation of a situation.

The court then observed:

> I think frankly I was interested in the result, to see if in any judgment, at least, the amounts awarded by the jury would in some way reflect a feeling of passion and prejudice as it related to Mr. Mattoon, and frankly I see nothing in the amounts other than I suppose in my judgment the amounts are relatively modest in view of the injuries that were sustained in the accident, so we can't assume prejudice as a consequence of the award, only, I suppose, in so far as it relates to the claim between Mr. Mattoon and Mrs. Thom, but the disassociated amounts are certainly within the proof offered. In fact, I think the $13,000 figure is awfully close to what was suggested by Mr. Horton in final argument, if I recall it correctly, and of course the amount for the little girl was even less, so on the whole I suspect it was error to deny Mr. Horton's motion, but whether or not that error is serious enough to cause the Court to grant a new trial I doubt, so I am going to let the judgment stand and deny the motion.

Again the court admitted it erred in admitting the second accident, when it said:

> Supposedly we learn something from each trial. There

is error, I suppose, in every trial, and that can't be avoided but I think I must accept the blame in this case for creating what I consider to be error in not requiring a more specific offer of proof when this trial commenced. It will be my intention to do so in the future, where you are attempting to relate a subsequent accident or something that would otherwise be prejudicial and not material to the issues of the case.

I am going to require counsel to be very specific in offers of proof. I think I failed in that regard in this case. I accepted general statements without a reference to specific facts, and I should not have done that, frankly.

Ordinarily, an order granting or denying a new trial is not to be reversed, except for abuse of discretion. A much stronger showing is required to reverse an order granting a new trial than is required to reverse an order denying a new trial. *Olpinski v. Clement,* 73 Wn.2d 944, 950, 442 P.2d 260 (1968).

We agree with the trial judge that, under the state of this record, it was error to admit evidence of the second collision. *Calbom v. Knudtzon,* 65 Wn.2d 157, 168, 396 P.2d 148, 29 Am. Jur. 2d *Evidence* § 298 *et seq.* (1967); *cf. State v. Goebel,* 36 Wn.2d 367, 218 P.2d 300 (1950). The second collision was irrelevant on the question of Mattoon's negligence in the instant case. The trial judge originally admitted the evidence on the theory that Thom, in defense of Mattoon's cross claim for damages, would establish that Mattoon sustained injury in the second collision and thus rebut Mattoon's contention that all of his injuries occurred in the instant collision. Had this theory been supported by evidence, the decision to admit the second collision would meet the test of relevancy on the damage issue. This did not materialize. As observed by the trial judge, there was only a fragmentary and nonspecific reference in the testimony of Mattoon's physician; this testimony came not as a result of examination by Thom, but by plaintiff's counsel. On the state of the record, a jury could only speculate as to the amount of aggravation, if any, because the only affirmative evidence on the issue came from Mattoon who denied

hospitalization and described a cut on the forehead as superficial and covered by a band-aid. In view of these developments, the admission of the second collision was improper.

We are unable to agree with the trial court's conclusion that the evidence was not prejudicial and thus we must reverse and grant the motion for new trial. While the trial court may have been correct when it observed that the damage award was well within the testimony, we cannot agree the second accident could not have influenced or prejudiced the jury in its determination of the liability issue as between Thom and Mattoon. Mattoon's credibility was attacked by all parties; in fact, the record tends to indicate that all parties were pointing the liability finger at Mattoon and adding that if Thom failed to yield the right-of-way, then she was also negligent. In the context of these facts, we must conclude the improper admission of the reference to the second collision and the resulting death of the mother and her unborn child could have prejudiced the jury against Mattoon on the liability issue and could have been a factor in its release of Thom. It may likewise have infected the damage award. We reach these conclusions reluctantly because our decision will necessitate a new trial for plaintiffs to whom a directed verdict had been granted and for whom the award of damages appears to be well within the evidence.

Thom argues that these errors were cured when, after the evidence was closed, she offered to stipulate to a mistrial on Mattoon's cross claim. We disagree. The inadmissible evidence would have been before the jury in its consideration of the critical question of liability.

Since this matter is being returned for a new trial, it is appropriate that we discuss some of the other errors assigned to instructions given and refused.

We find no error in court's instruction No. 7 to the effect that every car should be equipped with a good working horn capable of emitting sound under normal conditions for

200 feet and should be used by the driver when reasonably necessary to insure safe operation. The instruction was in the language of the statute. RCW 46.37.380. The claimed error is that there is no reasonable indication from the evidence that this would have had any material effect in the situation. The effect of the use or nonuse of the horn by Mattoon on the issue of negligence was properly a question for the jury. *See Patterson v. Krogh,* 51 Wn.2d 73, 316 P.2d 103 (1957); *Mitchell v. Rogers,* 37 Wn.2d 630, 225 P.2d 1074 (1950).

█ Likewise, we find no error in the giving of instructions Nos. 12, 13 and 14. These instructions told the jury that a statute of this state makes it unlawful to operate a car with one or more wheels off the highway, except to stop off the roadway or having stopped to proceed back on the pavement (No. 12); that an overtaking vehicle is required by statute to pass to the left of the overtaken vehicle (No. 13);[3] and the violation of a statute is negligence as a matter of law with the same effect as any other negligent act, namely, it does not render a defendant liable unless it is found to be the proximate cause of the injury or damage (No. 14). Mattoon argues these instructions were inappropriate because of the emergency created by the Thom car suddenly pulling onto the highway. Instruction No. 14 told the jury that statutory negligence, like ordinary negligence, must be the proximate cause of the injury or damage. Instruction No. 19, to which no exception was taken, informed the jury that if a person is confronted with an emergency, not of his own making, he is not negligent even if he does not make the wisest choice. We believe the instructions to which error is assigned when read in light of the other instructions reveal no error and allow both Thom and Mattoon to argue their respective theories to the jury.

Error is also assigned to the failure to give proposed instruction No. 7 as follows:

[3]Instruction No. 11, to which no exception was taken, delineated the situations under which a vehicle could pass to the right.

You are instructed that the speed of an automobile, in excess of that permitted by statute, is not the proximate cause of a collision when the automobile of the one charged with excessive speed was where it was entitled to be and the driver would not have had sufficient time to avoid a collision had he been driving at a lawful speed.

It is contended that this instruction is required by *Braden v. Rees,* 5 Wn. App. 106, 485 P.2d 995 (1971); *Bailey v. Carver,* 51 Wn.2d 416, 319 P.2d 821 (1957), and the cases cited therein. Thom contends the requested instruction was covered by court's instructions Nos. 5 (proximate cause), 9 (WPI 70.05—speed), 14 (violation of statute like other types of negligence must be the proximate cause of the injury to render defendant liable), and 17 (right to assume others will obey rules of the road); thus, Mattoon could fully argue the theory embodied in proposed instruction No. 7 to the jury. With this contention, we agree. We do not find *Braden v. Rees, supra,* and *Bailey v. Carver, supra,* applicable in the context of the facts in this case. Those cases involved a defendant who edged into an arterial from a side road where the view was obstructed and suddenly blocked the path of a plaintiff resulting in a collision. In that situation, the court held it was error not to give an instruction in the language of Mattoon's proposed instruction No. 7. We believe the holding that it is error not to give the instruction is limited to the factual situation presented by *Bailey* and *Braden.* In the instant case the intersection was not obstructed and both Mattoon and Thom had a clear view of each other. Each party could argue its respective theory under the instructions given and, therefore, we do not believe the court erred when it refused the proposed instruction.

It was not error to refuse proposed instruction No. 4[4]

[4]A person using an arterial highway is entitled to assume that other persons thereon will obey the traffic laws and he has a right to proceed upon such assumption until he knows, or in the exercise of reasonable care, should know to the contrary. Only when it becomes apparent or should become apparent to the favored driver that the disfavored driver will not yield the right-of-way is the favored driver required to react to the danger. When in the exercise of reasonable care, it

since it was substantially covered by court's instructions Nos. 9, 17 and 19.

The order denying defendant Mattoon's motion for a new trial is reversed.[5]

MUNSON, C.J., and EDGERTON, J., concur.

Petition for rehearing denied January 15, 1973.

becomes apparent to the favored driver that the disfavored driver will not yield the right-of-way, the favored driver is, nevertheless, still entitled to a reasonable reaction time before he can be charged with contributory negligence.

[5]Consideration might be given to limiting the retrial on Mattoon's cross claim to the issue of liability and holding a separate trial on damages should Mattoon prevail against Thom.