LEONARD JOHNSON, ET AL, *Appellants*, BARBARA J. STOTTS, *Plaintiff*, v. CARL CARBON, ET AL, *Respondents*.

*Edward A. Dawson, Kenneth V. Frederick* and *Dawson & Meade, P.S.,* for appellants.

*Eugene I. Annis, Clark H. Richards* and *Lukins & Annis P.S.,* for respondents.

SHIELDS, J. — Leonard Johnson appeals the denial of his motion for a new trial of a personal injury action following a jury verdict awarding him $13,200, less 25 percent comparative fault for a net judgment of $9,900. He asserts the trial court erred (1) when it allowed questioning, testimony and argument on causation based on speculation, and (2) when it failed to grant a new trial based on juror misconduct. We affirm.

On May 20, 1985, Mr. Johnson was involved in an automobile collision with Carl Carbon[1] in Spokane. Mr. Johnson did not seek or receive medical care that day. The

---

[1]Palouse Asphalt Paving, Asphalt Protective Products and Carl Carbon, Inc., are former Washington corporations. All respondents are referred to collectively as Mr. Carbon.

next day he contacted Dr. Hopwood, a general practitioner, and was given an appointment with Dr. Hopwood's assistant 4 days later. Mr. Johnson's injury was diagnosed as cervical shoulder strain. Dr. Hopwood first saw Mr. Johnson on June 28. Dr. Hopwood testified Mr. Johnson reported "his neck was better"; however, since going back to work in construction a week earlier, "he had been getting worse" in that "[h]e was having sharp pain in the upper shoulder . . .". Dr. Hopwood did not restrict Mr. Johnson's work activities. Through November 1985, Mr. Johnson was seen by Dr. Hopwood, received physical therapy from Duffy Reedy, and participated in a variety of physical activities. These activities included carrying and nailing Sheetrock in his basement, playing basketball, running and shoveling snow. X-rays ordered by Dr. Hopwood in November 1985 showed a normal cervical spine with no evidence of bone injury.

On December 5, 1985, Dr. Hopwood ordered a CAT scan to determine if Mr. Johnson had any soft tissue injury. The CAT scan indicated a herniated disk. Mr. Reedy began to treat Mr. Johnson with traction, which was effective. On January 16, 1986, Mr. Johnson told Mr. Reedy his neck was still not what it was before "contact" basketball activity on January 13, 1986. On January 21, Mr. Johnson first reported shakes in his hand to Dr. Hopwood, who referred him to Dr. Gerber, a neurosurgeon. On January 22, Mr. Johnson had his last physical therapy treatment from Mr. Reedy. On January 31, Dr. Gerber examined Mr. Johnson and diagnosed a herniated disk. On July 28, Mr. Johnson was examined by a second neurosurgeon, Dr. Demakas, who performed a double cervical spine fusion on Mr. Johnson in September 1986.

Mr. Johnson was granted summary judgment of liability on the issue of failure to yield the right of way. Trial proceeded on the issues of proximate cause, comparative fault and damages. Before receiving evidence, the trial court heard Mr. Johnson's motion in limine to exclude questioning, testimony and argument concerning other "possible"

causes of his herniated disk. The trial court reserved ruling. During trial, Mr. Johnson renewed his motion. The trial court denied Mr. Johnson's motion after Mr. Carbon made an offer of proof he would present evidence through the testimony of Dr. Warren Adams, an orthopedic surgeon, the automobile accident did not cause Mr. Johnson's disk injury.

Two of Mr. Johnson's experts, Dr. Hopwood and Dr. Demakas, testified it was their opinion Mr. Johnson's herniated disk was caused by the automobile accident. Mr. Carbon's expert, Dr. Adams, testified there was no causal relationship between the accident and the herniated disk because signs and symptoms of nerve impingement would have presented themselves almost immediately or within a few days. Furthermore, he testified the physical therapy by Mr. Reedy and the physical activity by Mr. Johnson from the time of the accident up through the first part of December 1985 were not consistent with a herniated disk.

The jury returned a verdict for less than the amount offered by Mr. Carbon in settlement. Counsel for both Mr. Johnson and Mr. Carbon contacted jurors and discussed the reasons for the verdict. Fifteen affidavits, obtained from eleven jurors, reflected the jury had discussed the issue of causation and their personal experiences with back injuries and had speculated on why Mr. Johnson kept a separate house.[2] Mr. Johnson's motion for a new trial was denied. This appeal followed.

I

PROXIMATE CAUSE

Mr. Johnson contends the court erred in permitting Mr. Carbon to ask questions, elicit testimony and argue the herniated disk suffered by Mr. Johnson was caused by something other than the automobile accident. First, he argues other "possible" causes were stressed in cross exami-

---

[2] In his brief Mr. Johnson contends the jury wondered if he, a black man, kept a separate house as a scheme to defraud welfare. The record before us makes no reference to Mr. Johnson's race. None of the affidavits indicate the jury decided Mr. Johnson's separate house was a scheme to defraud welfare.

nation of his experts. Second, he argues a defendant has the burden of proving a superseding cause. Third, he argues the jury was confused and prejudiced by the causation evidence introduced by Mr. Carbon.

■ Mr. Johnson's first argument concerns cross examination of his experts. He argues Mr. Carbon stressed other "possible" causes in cross examination. However, the record reflects cross examination addressed the testimony of the experts and exhibits. Mr. Johnson's experts testified concerning other causes of herniated disks. Mr. Johnson's treating expert neurosurgeon, Dr. Demakas, raised the issue of degeneration of spinal disks when he stated trauma accelerates or may even initiate degeneration. Dr. Hopwood testified concerning herniated disks in general. Mr. Reedy testified, and his exhibit records reflected, Mr. Johnson's range of motion as of December 2, 1985, was within normal limits in all cervical motions and his functional daily activities seemed to be doing very well. However, following the December 5 CAT scan, Dr. Hopwood ordered a specific change in physical therapy treatment to traction. Mr. Reedy also testified, and his exhibit records reflected, changes occurred in Mr. Johnson's activity level as well as his neck symptoms following a specific "contact" basketball activity on January 13, 1986. Basketball activity in general is mentioned five other times in Mr. Reedy's records. *Washington Irrig. & Dev. Co. v. Sherman*, 106 Wn.2d 685, 724 P.2d 997 (1986), relied upon by Mr. Johnson, is distinguishable because in that case there was no evidence of any subsequent change or aggravation of the claimant's medical symptoms. Here, the record reflects there was evidence of subsequent changes in symptoms, treatment and activity level.

■■ The scope of cross examination is within the sound discretion of the trial court. *Falk v. Keene Corp.*, 53 Wn. App. 238, 250, 767 P.2d 576, *aff'd*, 113 Wn.2d 645, 782 P.2d 974 (1989). The scope of inquiry of an expert witness must

be decided by the trial court in the context of the evidence submitted, and the foundation and purposes proposed for introduction of that evidence. *Supanchick v. Pfaff*, 51 Wn. App. 861, 867-68, 756 P.2d 146 (1988). Here, the trial court's ruling on the scope of cross examination of Mr. Johnson's expert witnesses occurred after Mr. Carbon's offer of proof of the proposed testimony of Dr. Adams that the herniated disk injury was not caused by the accident. An appellate court will not overturn a discretionary ruling absent a showing of abuse. *Miller v. Peterson*, 42 Wn. App. 822, 714 P.2d 695, *review denied*, 106 Wn.2d 1006 (1986). There was no abuse shown here. The cross examination of Mr. Johnson's experts was proper and within the scope of the direct examination.

Mr. Johnson's second argument concerns superseding cause. He argues Mr. Carbon, as the defendant, has the burden of proving a superseding cause of the herniated disk. However, on the issue of causation, Mr. Carbon did not affirmatively defend on a theory of superseding cause; he denied the automobile accident caused the herniated disk. Therefore, Mr. Carbon was not required to show what caused Mr. Johnson's herniated disk, but only to show the automobile accident did not cause it. This he did by way of Dr. Adams' expert testimony that the accident caused only a cervical shoulder strain as originally diagnosed by Dr. Hopwood. Additionally, on the issue of damages, the test of relevancy is whether the evidence has a tendency to make the existence of the fact to be proved more probable or less probable than it would be without the evidence. *Garcia v. Providence Med. Ctr.*, 60 Wn. App. 635, 642, 806 P.2d 766 (citing *State v. Renfro*, 96 Wn.2d 902, 906, 639 P.2d 737, *cert. denied*, 459 U.S. 842 (1982)), *review denied*, 117 Wn.2d 1015 (1991). The evidence adduced by Mr. Carbon did establish the relevance of Mr. Johnson's subsequent symptoms, treatment and activities to his claim for damages.

Furthermore, the cross examination testimony of Mr. Johnson's experts about his physical activities after the accident, coupled with the testimony about degeneration of his cervical disks, did not improperly suggest a superseding event caused the herniated disk. Mr. Johnson's reliance on *Allen v. Mattoon*, 8 Wn. App. 220, 504 P.2d 316 (1972) is misplaced. In that case defendant/cross claimant Mr. Mattoon had been involved in a second similar accident 10 months after the accident for which suit was brought. This second accident resulted in the death of the passenger; however, there was no medical evidence concerning Mr. Mattoon's condition as a result of the second accident and he denied injury from it. The trial court permitted references to the second accident on the basis the severity of the impact was material to prove all injuries were from the first accident and not the second accident. The appellate court reversed, but would have permitted the evidence concerning the second accident as relevant had there been evidence of injury and medical testimony concerning it. That is the situation here. Mr. Carbon had the right to examine all aspects of the causal relationship. The evidence permitted by the trial court, over Mr. Johnson's objection, was relevant to both the causation issue and the damage issue. It supported Mr. Carbon's theory the accident did not cause the herniated disk injury and damages should not be awarded for it.

Mr. Johnson's third argument concerns jury confusion and prejudice as a result of the causation evidence. This argument is not supported by the verdict returned by the jury. The jury verdict, which was limited to the issues of whether the accident was a proximate cause of an injury and whether Mr. Johnson's comparative fault was a contributing proximate cause of it and the resulting damage, indicates the jury understood the causation issue. Liability was not a jury issue; therefore, had the jury believed the accident proximately caused neither injury nor damage, it

would not have awarded Mr. Johnson anything. Substantial evidence was presented to support an award of damages based on the accident proximately causing a cervical shoulder strain injury only. The jury heard conflicting expert testimony whether the accident caused a cervical shoulder strain injury or a herniated disk injury, and the treatment for each injury. It determined which expert to believe, what injury the accident caused, and awarded damages accordingly. The credibility of witnesses and the weight to be given the evidence are matters which rest within the province of the jury. *Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc.*, 96 Wn.2d 939, 640 P.2d 1051 (1982).

## II
### JUROR MISCONDUCT

■ Next, Mr. Johnson contends the trial court erred in denying his motion for a new trial based on juror misconduct. Mr. Johnson first contends the jurors brought in outside evidence when they speculated why Mr. Johnson kept a separate house. Even if the discussion took place, that fact is not significant unless it is tied to a specific action by the jury. Here the affidavits show neither a specific action by the jury nor a preexisting bias or prejudice.

■ Next, Mr. Johnson contends it was improper for the jurors to discuss their personal experiences with respect to injuries, including herniated disks. Here, the discussions are not prejudicial, they are within the realm of life experiences a juror is expected to bring into deliberations. The individual or collective thought processes leading to a verdict " 'inhere in the verdict' " and cannot be used to impeach a jury verdict. *State v. Ng*, 110 Wn.2d 32, 43, 750 P.2d 632 (1988).

■ Determination of juror misconduct is within the sound discretion of the trial court and will not be disturbed absent a showing of abuse. *State v. Young*, 89 Wn.2d 613, 630, 574 P.2d 1171, *cert. denied*, 439 U.S. 870 (1978). In

determining whether there is misconduct, the trial court must determine if extraneous matter considered by the jurors inheres in the verdict. If it does, it may not be considered in support of a motion for a new trial. If it does not, it may be considered. *Gardner v. Malone*, 60 Wn.2d 836, 841, 376 P.2d 651, 379 P.2d 918 (1962). The effect of misconduct is for the trial court to decide. *Halverson v. Anderson*, 82 Wn.2d 746, 752, 513 P.2d 827 (1973). The trial court found the issues raised by the affidavits inhered in the verdict and were not sufficient to show misconduct. In ruling, the trial court stated:

> A jury deliberation is supposed to be an opportunity for 12 people of common sense to get together to weigh the evidence, to sort it out within the context of common sense, which necessarily includes their past experiences, and their life experiences, and their passions and their prejudices. If their passions and prejudices get out of line, we have something to deal with. I see no indication of that here other than a low verdict, which could be explained otherwise.

The trial court did not abuse its discretion when it determined no jury misconduct had occurred. Denial of the motion for a new trial was proper.

We find no error. The decision of the trial court and the judgment on the verdict are affirmed.

GREEN, C.J., and MUNSON, J., concur.

Reconsideration denied October 29, 1991.