46 P.3d 797 (2002)
111 Wash.App. 536
Hank J. CHIAPPETTA, Appellant,
v.
Franklin BAHR and Jane Doe Bahr individually, and the marital community composed thereof; Jonathan and Jane Doe Sprague, individually, and the marital community composed thereof; J. Mertens and Jane Doe Mertens, individually and the marital community composed thereof, Defendants,
City of Spokane, a governmental entity, Respondent.
No. 19551-1-III.
Court of Appeals of Washington, Division 3, Panel Two.
February 5, 2002.
Publication Ordered May 7, 2002.
*798 Michael J. Riccelli, Spokane, for Appellant.
Michael F. Connelly, Rebecca L. Stewart, Spokane County City Attorney's Office, for Respondent.
SCHULTHEIS, J.
Hank Chiappetta's car was hit by a driver attempting to elude police officers. Claiming injuries due to negligence, Mr. Chiappetta sued the driver who hit him, the officers pursuing the driver, and the City of Spokane. Trial was before a jury. During jury deliberations, various jurors allegedly made comments that indicated bias, that violated the jury instructions, and that injected evidence not elicited at trial. Mr. Chiappetta appeals the trial court's denial of his motion for a new trial. We find that the admissible portions of Mr. Chiappetta's evidence do not support a claim of juror misconduct, and affirm.

FACTS
Late one night in October 1992, Sergeant Dean Sprague of the Spokane Police Department *799 attempted to stop a vehicle that had no rear license plate. Sergeant Sprague, who was driving an unmarked police car, activated his emergency lights and called dispatch. The vehicle, driven by Franklin Bahr, first appeared to slow down, but then accelerated as it drove through a residential area in north Spokane. Sergeant Sprague activated his siren and pursued.
Both vehicles drove north on Regal Street. Officer Jerome Mertens heard about the pursuit and waited in his marked police car emergency lights activatednear the intersection of Regal and Wellesley Avenue. Mr. Bahr drove past Officer Mertens and through the intersection at Wellesley without stopping at the stop sign. At this point, Sergeant Sprague slowed down and Officer Mertens took over the pursuit, Sergeant Sprague following to monitor. According to Officer Mertens, Mr. Bahr was now driving through stop signs and residential neighborhoods at speeds exceeding 60 miles per hour. Because Mr. Bahr continued to accelerate and to run stop signs, Sergeant Sprague decided to terminate the pursuit. He ordered Officer Mertens to stop, and when the officer did not immediately respond, again radioed him to stop the pursuit. Officer Mertens turned off his lights and siren and slowed down about six blocks from Francis Avenue.
At the intersection of Regal and Francis, Mr. Chiappetta sat in his car waiting to turn left onto Regal. Mr. Bahr drove through the stop sign at high speed and hit Mr. Chiappetta's car broadside, wrecking both vehicles and injuring Mr. Chiappetta. Officer Mertens saw the collision and both officers arrived at the scene. While Officer Mertens pursued Mr. Bahr on foot, Sergeant Sprague attended to Mr. Chiappetta's injuries.
In October 1995, Mr. Chiappetta filed a summons and complaint against Mr. Bahr, Sergeant Sprague, Officer Mertens, their marital communities, and the City of Spokane. He claimed permanent injuries proximately caused by negligent driving and negligent pursuit. Prior to trial, the court entered an order finding that Mr. Chiappetta was not at fault in the accident and that Mr. Bahr had pleaded guilty to the accident. Mr. Chiappetta also voluntarily dismissed each officer as a defendant.
The jury trial was held May 8 through May 15, 2000. At issue were the relative faults of Mr. Bahr and the City. If the jury decided that both defendants were negligent, then it was instructed to determine what percentage of the combined negligence was attributable to each defendant. The jury found that Mr. Bahr was 100 percent responsible for Mr. Chiappetta's injuries and that the City was not negligent. After the verdict, Mr. Chiappetta moved for judgment as a matter of law or for a new trial, alleging among others things juror misconduct. In support, he submitted the affidavits of two jurors, Paul Brunton and Dina Fernandez. According to these affidavits, various jurors had made comments during deliberations regarding the reasonableness of the police pursuit (rather than following the jury instruction to determine how a reasonable person would drive), the likelihood that Mr. Bahr would have been speeding without police pursuit, Mr. Chiappetta's possible lack of work ethic, and the cost to the citizens if the City were found negligent. The trial court denied the motion and this appeal followed.

JUROR MISCONDUCT
Mr. Chiappetta contends the trial court erred in deciding that he had not established juror misconduct or prejudice to warrant a new trial. This court will not reverse a trial court's ruling on a motion for new trial absent a showing of abuse of discretion. State v. Balisok, 123 Wash.2d 114, 117, 866 P.2d 631 (1994). The appellant must make a strong, affirmative showing of misconduct in order to overcome the policy favoring stable verdicts and the secret and frank discussion of the evidence by the jury. Id. at 117-18, 866 P.2d 631 (citing Richards v. Overlake Hosp. Med. Ctr., 59 Wash.App. 266, 271-72, 796 P.2d 737 (1990)). If juror misconduct can be demonstrated with objective proof without probing the jurors' mental processes, and if the trial court has any doubt about whether the misconduct affected the verdict, it is obliged to grant a new trial. Adkins v. Aluminum Co. of Am., 110 Wash.2d 128, 137, 750 P.2d 1257 (1988); 756 P.2d 142.
*800 Juror affidavits may not be used to contest the thought processes involved in reaching a verdict. Ayers v. Johnson & Johnson Baby Prods. Co., 117 Wash.2d 747, 768, 818 P.2d 1337 (1991). "The individual or collective thought processes leading to a verdict `inhere in the verdict' and cannot be used to impeach a jury verdict." Richards, 59 Wash.App. at 272, 796 P.2d 737 (quoting State v. Ng, 110 Wash.2d 32, 43, 750 P.2d 632 (1988)); see generally Gardner v. Malone, 60 Wash.2d 836, 841-42, 376 P.2d 651 (1962); 379 P.2d 918. These thought processes include juror motives, the effect the evidence had on the jurors, the weight given to the evidence by particular jurors, and the jurors' intentions and beliefs. Ayers, 117 Wash.2d at 768-69, 818 P.2d 1337. Any averments concerning these mental processes are inadmissible to impeach the verdict. Id. Accordingly, evidence that a juror misunderstood or failed to follow the court's instructions inheres in the verdict and may not be considered. Id. at 769, 818 P.2d 1337.
In this case, Mr. Chiappetta submitted the affidavits of two jurors. Both affidavits, in nearly identical language, state that the jury (1) only briefly reviewed the instructions; (2) discussed the costs to the City, the City's insurance coverage, and the possibility that higher taxes might result from finding the City liable; (3) discussed the probability that Mr. Bahr was speeding to reach the county line and leave Spokane police jurisdiction; (4) heard a juror comment that she had back surgery and was able to return to work, bringing Mr. Chiappetta's character into question; and (5) discussed what would be reasonably safe behavior by a police officer rather than the behavior of a reasonably careful person, as directed by the trial court's instructions. The trial court ruled that Mr. Chiappetta did not establish any causes that materially affected his substantial rights. In its oral ruling, the trial court found that the juror comments mentioned in the affidavits were indicative of "twelve separate human beings here who have their own life experiences[.]" Report of Proceedings (July 21, 2000) at 32. The court also found that the affidavits did not show that the jurors ignored the court's instructions or imposed their own standards of negligence.
The record and the admissible portions of the affidavits support the trial court's exercise of discretion.
I. Cost to the City. According to juror Brunton's affidavit, "[t]here was some discussion about the City's ability to pay any judgment or if it might raise taxes, but some jurors indicated they thought the City was probably adequately insured." Clerk's Papers (CP) at 222. The court's instruction 17 informs the jury that "[w]hether a party is or is not insured has no bearing whatever on any issue that you must decide. You must refrain from any inference, speculation or discussion about insurance." CP at 203. Mr. Chiappetta contends the jury's violation of instruction 17 is presumptively prejudicial. As noted above, a jury's failure to follow the court's instructions inheres in the verdict, and any affidavit alleging misconduct on this basis may not be considered. Ayers, 117 Wash.2d at 769, 818 P.2d 1337. Further, even if the jurors' speculation regarding the City's ability to pay a judgment were misconduct, no prejudice is shown. Ability to pay relates only to the issue of damages, not to liability.
II. Extrinsic evidence. The affidavits quote one juror as stating, "`Mr. Bahr would have traveled 60 miles an hour through the entire pursuit route regardless of when the police stopped chasing him, because he was probably heading for the county line where the police would have had to stop chasing him.'" CP at 222, 225. Mr. Chiappetta contends this misstatement of the law constitutes the improper introduction of extrinsic evidence.
Consideration of novel or extrinsic evidence by a jury during deliberations is misconduct and can be grounds for a new trial. Balisok, 123 Wash.2d at 118, 866 P.2d 631. Novel or extrinsic evidence is oral or documentary information outside the evidence admitted at trial. Id. In this case, the juror's statement is more properly characterized as speculation rather than information. The juror does not purport to have special knowledge regarding police jurisdiction. Consequently, even if misconduct, the statement had little prejudicial effect. See *801 State v. Hall, 40 Wash.App. 162, 169, 697 P.2d 597 (1985) (the trial court must find something more than the mere possibility of prejudice).
III. Juror's personal experience with back surgery. Both affidavits also indicate that "[o]ne juror stated that she had had prior back surgery but was able to go back to work after the surgery, and wanted to discuss Mr. Chiappetta's character in not going back to work. However, other jurors stated that Mr. Chiappetta's character was not at issue." CP at 222, 225. Mr. Chiappetta contends this statement impermissibly raised the issue of character and violated the instruction directing the jury to base the damages on evidence, not speculation.
Personal experience with injuries is within the realm of life experiences that a juror is expected to bring into deliberations. Johnson v. Carbon, 63 Wash.App. 294, 301, 818 P.2d 603 (1991). These experiences and their effect on the collective thought processes during jury deliberations inhere in the verdict and cannot be used to impeach the verdict. Id. At any rate, this juror's comments relate only to the issue of damages, which was never reached in regard to the City.
IV. Standard of care. The court's instruction 12 directed the jury to apply the standard of care of a reasonably careful person. Instruction 14 amended the standard of care to include the special standards of an authorized emergency vehicle, including the privilege to exceed the speed limit as long as life or property is not endangered. According to the affidavits submitted by Mr. Chiappetta, one juror said, "`let's put ourselves in a police uniform, and consider if it was safe for a policeman to be driving the pursuit route at 60 miles an hour or more, with his training and observation skills [.]'" CP at 221-22. Another juror allegedly stated that he or she was "`surprised there were any restrictions on the police pursuing somebody thought to have violated the law, as it is a police officer's duty to pursue and apprehend law breakers.'" CP at 225. Mr. Chiappetta contends these comments indicate bias and violation of the jury instructions. Both comments, however, relate to the mental processes of the jurors, inhere in the verdict, and may not be considered by the court. Ayers, 117 Wash.2d at 768-69, 818 P.2d 1337; Richards, 59 Wash.App. at 272, 796 P.2d 737.

CONCLUSION
To summarize, most of the juror comments contained in the affidavits presented by Mr. Chiappetta concern juror thought processes that inhere in the verdict. Consequently, they cannot support a claim of juror misconduct. Because we find that even the admissible comments do not indicate improper juror conduct, we affirm the trial court's denial of Mr. Chiappetta's motion for a new trial.
Affirmed.
WE CONCUR: BROWN, A.C.J., and KATO, J.