COURT OF APPEALS DIV
STATE OF WASHINGTON

2013 OCT 28 AM 10: 35



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| FIKRETA CUTUK and SEJFUDIN CUTUK, wife and husband, | ) ) ) | NO. 68406-0-I |
| Appellants, | ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| JEFFREY F. BRAY, M.D., | ) ) | |
| Respondent. | ) ) | FILED: October 28, 2013 |

LEACH, C.J. — In this medical negligence case, Fikreta Cutuk and Sejfudin Cutuk appeal the trial court's order granting Dr. Bray a new trial on all issues based on juror misconduct. Because the court did not abuse its discretion in finding that the juror misconduct likely affected the outcome of the trial, we affirm.

## FACTS

Dr. Jeffrey Bray misdiagnosed Fikreta Cutuk's ectopic pregnancy and consequently removed her one healthy fallopian tube. Later, she underwent a second surgery to remove the diseased one. Cutuk sued Bray for medical negligence. A jury found Bray negligent and awarded Cutuk $71,795.53.

After trial, defense counsel interviewed several jurors, and Bray moved for a new trial based upon juror misconduct. Bray supported his motion with the declarations of three jurors, two who had dissented from the verdict and the

foreperson, who had agreed with the verdict. The declarations each stated that a juror had looked up a definition of "negligence" in a dictionary, reported the definition to the jury, and the definition was discussed during jury deliberations.

In response, Cutuk filed declarations from six additional jurors. Four stated that the alleged incident did not occur, although one of them recalled someone wishing they could use a dictionary. One stated that a juror had looked up the definition of "negligence" and the definition was "discussed briefly by a couple of jurors." And the sixth juror stated, "There was a juror who said he would, or did, look up the word in a dictionary, but there was never a conversation amongst us jurors of any definition of negligence other than the definition provided by the court."

After reviewing the conflicting declarations, the court found "that objective proof has been presented to satisfy the court that in fact a juror did look up the definition of negligence and did discuss, however briefly, that definition with the other jurors." Reasoning that the common definitions of "negligence" generally found in dictionaries would contradict the specialized standard in a medical negligence case, the court concluded that the misconduct would likely affect the jury's verdict. Because the court understood controlling case law to require a new trial if it had any doubt that the misconduct affected the verdict, it granted Bray a new trial. Cutuk appeals.

## STANDARD OF REVIEW

The trial court has discretion to decide whether to grant a new trial.[1] We will disturb the trial court's decision only if we find a clear abuse of that discretion or if the decision is based on an erroneous interpretation of the law.[2] A court abuses its discretion when its decision is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'"[3] We give greater deference to a decision to grant a new trial than to a decision to deny a new trial.[4]

## ANALYSIS

Cutuk contends that the record contains insufficient evidence to support the trial court's finding that the alleged misconduct occurred. Alternatively, she claims that the trial court abused its discretion when it found the misconduct occurred without holding an evidentiary hearing. Finally, she claims that if the misconduct did occur, it did not clearly influence the jury's verdict.

When a party challenges a verdict with evidence of alleged juror misconduct through consideration of extraneous matter, the trial court must consider two questions: (1) whether the court may even consider the evidence

---

[1] State v. Jackman, 113 Wn.2d 772, 777, 783 P.2d 580 (1989).

[2] Jackman, 113 Wn.2d at 777.

[3] Breckenridge v. Valley Gen. Hosp., 150 Wn.2d 197, 203-04, 75 P.3d 944 (2003) (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

[4] Richards v. Overlake Hosp. Med. Ctr., 59 Wn. App. 266, 271, 796 P.2d 737 (1990).

-3-

and (2) whether the alleged misconduct warrants a new trial.[5] To answer the first question, the court must decide whether the alleged misconduct "inheres in the verdict."[6] Evidence that describes "[t]he mental processes by which individual jurors reached their respective conclusions, their motives in arriving at their verdicts, the effect the evidence may have had upon the jurors or the weight particular jurors may have given to particular evidence, or the jurors' intentions and beliefs,"[7] inheres in the verdict.

If the misconduct inheres in the verdict, the court may not consider the evidence. If the misconduct does not inhere in the verdict, the court may consider the evidence; but not all misconduct necessitates a new trial. Juror misconduct only warrants a new trial when it causes prejudice.[8] To evaluate potential prejudice, the court makes an objective inquiry into whether the misconduct could have affected the jury's decision, rather than inquiring into its actual effect, because the actual effect inheres in the jury verdict.[9] Due to the great deference an appellate court gives to a trial court's discretionary decision to

---

[5] Johnson v. Carbon, 63 Wn. App. 294, 302, 818 P.2d 603 (1991).
[6] Johnson, 63 Wn. App. at 302.
[7] Cox v. Charles Wright Acad., Inc., 70 Wn.2d 173, 179-80, 422 P.2d 515 (1967).
[8] State v. Lemieux, 75 Wn.2d 89, 91, 448 P.2d 943 (1968); State v. Briggs, 55 Wn. App. 44, 55, 776 P.2d 1347 (1989); State v. Rempel, 53 Wn. App. 799, 801, 770 P.2d 1058 (1989), rev'd on other grounds, 114 Wn.2d 77, 785 P.2d 1134 (1990).
[9] Richards, 59 Wn. App. at 273.

-4-

grant a new trial, Cutuk bears a heavy burden to show that the trial court's exercise of discretion in this case was manifestly unreasonable or based upon untenable grounds.

To support his request for a new trial, Bray presented declarations of three jurors, Jill Lang, Cheryl Jones, and Joanna Satterwhite. Each stated that a juror conducted outside research and reported the results to the jury. In her declaration, Lang stated, "One juror looked up the definition of negligence in a dictionary and reported the definition back to the rest of the jurors. The dictionary definition of negligence was discussed during deliberations."

Jones stated,

> On Tuesday morning, the third day of deliberations, . . . one juror reported to the group that he was struggling with what negligence meant and looked up the definition of negligence in a dictionary. He said he pulled the dictionary off his shelf at his home. He reported the definition back to the rest of the jurors. The dictionary definition of negligence was discussed during deliberations [for] approximately 10 minutes.

And Satterwhite described, "One juror had to look up the definition of negligence in a dictionary and reported the definition back to the rest of the jurors. The dictionary definition of negligence was discussed during deliberations."

In response, Cutuk submitted declarations from six additional jurors, four of whom declared that no one reported consulting a dictionary and the jury did not engage in any discussion of a definition outside the scope of the evidence or

the jury instructions. However, one juror, Eric Wiebusch, stated, "I recall that on the beginning of the last day Juror Number 5, Jerry, stated that he had looked up the definition of negligence in a dictionary the previous evening. I do not recall what that definition was. It was discussed briefly by a couple of jurors."[10]

The trial court considered all nine juror declarations before it ruled on Bray's motion.[11] In his oral ruling, the trial judge stated,

> It doesn't surprise me, given the dynamics of a jury situation, that some jurors will hear some things and other jurors will not hear those same things. . . .
> . . . .
> . . . I have at least four jurors who say it did occur. I have a fifth one who says, well, there was something generally like that. And then I have three who say they don't recall it occurring. . . .
> . . . .
> So bottom line, the court makes a factual finding that objective proof has been presented to satisfy the court that in fact a juror did look up the definition of negligence and did discuss, however briefly, that definition with the other jurors.

The record amply supports the trial judge's factual determination that Bray met his burden to show the misconduct actually occurred.

The trial court determined that <u>Adkins v. Aluminum Co. of America</u>[12] required that it grant a new trial if doubt existed about whether the misconduct

---

[10] Notably, juror number 5, Jerry Patzer, categorically denied having looked up the word "negligence" or sharing any definition of the word with the other jurors.

[11] Three jurors declined to be interviewed.

[12] 110 Wn.2d 128, 137-38, 750 P.2d 1257 (1988).

affected the verdict. Because the trial court concluded that the misconduct likely affected the verdict, it ordered a new trial on all issues.

In Adkins, the court stated,

> Where jury misconduct can be demonstrated by objective proof without probing the jurors' mental processes, the effect the improper information may have had upon the jury is a question properly determined in the sound discretion of the trial court. If the trial court has any doubt about whether the misconduct affected the verdict, it is obliged to grant a new trial.[13]

The Adkins court considered a very similar issue to this case. While deliberating on a personal injury suit, the jury looked up definitions of "negligence" and "proximate cause" in a 1933 edition of Black's Law Dictionary supplied by the court bailiff. The Supreme Court reviewed the trial court's decision to grant a mistrial under the abuse of discretion standard.[14]

The court noted that while the dictionary definitions did not amount to new evidence as such, they constituted extrinsic information that was not admitted as evidence at trial or provided by the trial court. It further noted that the Black's Law Dictionary definitions contained legal premises not applicable to the case.[15] The Supreme Court affirmed the trial court, holding that it did not abuse its

---

[13] Adkins, 110 Wn.2d at 137 (citation omitted).
[14] Adkins, 110 Wn.2d at 136-37.
[15] Adkins, 110 Wn.2d at 138.

discretion because it "was justified in concluding that it could not reasonably say that the jury was not influenced by the dictionary."[16]

Here, like in <u>Adkins</u>, the court acknowledged that the jurors' testimony about any effect the discussion had on jury deliberations inhered in the verdict and should not be considered by it when deciding the motion. Instead, the court reasoned that "in all probability the misconduct would affect the verdict" because the typical dictionary definition of "negligence," even relying on a legal dictionary, differs substantially from the negligence definition used in a medical negligence action.

The trial court's decision to grant a new trial accords with <u>Adkins</u>. The trial court did not know exactly what dictionary definition of negligence was reported to the jury or what effect, if any, that report had on the jurors' deliberative process. The trial court made an objective assessment that the juror's misconduct likely affected the jury's verdict and reasonably doubted that the jury considered only the definition of "negligence" provided in the jury instructions. The court applied <u>Adkins</u> correctly when it resolved its doubts against the verdict.

Cutuk, however, contends that <u>Adkins</u> only applies "where the trial court is privy to the nature of the extrinsic material considered by the jury." She argues vigorously that the unknown elements of the jury misconduct should have been

---

[16] <u>Adkins</u>, 110 Wn.2d at 138.

fatal to Bray's motion for a new trial. Instead of relying on Adkins, she asks the court to apply Tarabochia v. Johnson Line, Inc.,[17] which she claims dictates a different result. We find Tarabochia distinguishable.

There, our Supreme Court reversed a trial court decision granting a new trial where the jury conducted an experiment inside the jury room trying to recreate the circumstances that led to the respondent's injury. The respondent longshoreman fell into a hole between several bags of urea, a crystalline chemical, while unloading cargo on a ship.[18] The parties presented conflicting evidence about whether urea had spilled from the bags and become wet and slippery, thus creating the hazardous condition that led to the accident.[19] The court admitted into evidence the respondent's shoes, a plastic bag like those used to store the urea, and two samples of urea.[20] The jury used these materials to conduct an experiment, although the jurors' affidavits did not detail the exact nature and results of that experiment. The court noted, "It is not unlikely that the jury thought when it was given the plastic bag, the urea crystals and the shoes, that it was being invited to conduct just such a test as it undertook."[21] The Supreme Court found that because nothing indicated the jurors obtained new

---

[17] 73 Wn.2d 751, 440 P.2d 187 (1968).
[18] Tarabochia, 73 Wn.2d at 752.
[19] Tarabochia, 73 Wn.2d at 752.
[20] Tarabochia, 73 Wn.2d at 752.
[21] Tarabochia, 73 Wn.2d at 757 n.2.

material facts through their experimentation, the trial court erred by granting a new trial.[22]

Despite Cutuk's insistence that uncertainty about exactly what took place in the jury room controls the outcome of this case, the court did not decide Tarabochia on that basis. Instead, the court found that the party seeking a new trial had failed to demonstrate the discovery of new material facts "which must have influenced the verdict."[23] Unlike Tarabochia, where the jurors relied only on information already available to them inside the jury room, and like Adkins, the jury here received extrinsic information in the form of a dictionary definition of a legal term critical to the outcome of the case.

Alternatively, Cutuk argues that the court erred by ruling on Bray's motion without conducting a full evidentiary hearing before resolving the disputed facts presented in the jurors' declarations. We disagree. Under CR 59(a)(2), the court may grant a new trial based upon

> [m]isconduct of prevailing party or jury; and whenever any one or more of the jurors shall have been induced to assent to any general or special verdict or to a finding on any question or questions submitted to the jury by the court, other and different from his own conclusions, and arrived at by a resort to the determination of chance or lot, such misconduct may be proved by the affidavits of one or more of the jurors.

---

[22] Tarabochia, 73 Wn.2d at 754.
[23] Tarabochia, 73 Wn.2d at 757.

Cutuk cites the Ninth Circuit's statement in United States v. Saya,[24] a juror misconduct case out of Hawaii, that "'[a]lthough it is usually preferable to hold [an evidentiary] hearing,' it is not necessary where 'the court [knows] the exact scope and nature of the . . . extraneous information.'" Saya does not justify finding that the trial court abused its discretion here. The Saya court stated the current Ninth Circuit rule: "'An evidentiary hearing is not mandated every time there is an allegation of jury misconduct or bias. Rather, in determining whether a hearing must be held, the court must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source.'"[25]

The trial court did that here. In its oral ruling, the court noted the seriousness of the allegations and the potential breach of the jurors' oath. The judge acknowledged that he saw no evidence of juror bias and no reason to question the credibility of the three jurors who signed declarations for Bray and noted that even two of Cutuk's juror declarations contained statements corroborating the misconduct allegations. The court recognized that among any group of twelve jurors, some may hear things differently or focus on different parts of the discussion. Therefore, it found significant objective evidence that the

---

[24] 247 F.3d 929, 935 (9th Cir. 2001) (some alterations in original) (quoting United States v. Halbert, 712 F.2d 388, 389 (9th Cir. 1983)).

[25] Saya, 247 F.3d at 934-35 (quoting United States v. Angulo, 4 F.3d 843, 847 (9th Cir. 1993)).

misconduct occurred. Cutuk fails to demonstrate the need for an evidentiary hearing to properly determine the salient facts.

Cutuk acknowledges that "an evidentiary hearing is not mandated every time there is an allegation of jury misconduct," yet she implies that the trial court must conduct one if the parties dispute any of the facts surrounding alleged misconduct. She cites State v. Parker[26] and Halverson v. Anderson.[27] In Parker, the court noted that allegations of jury misconduct must be taken as true if they are not denied. We reject Cutuk's asserted corollary—that if one side disputes the allegations, then the court must conduct an evidentiary hear to resolve the dispute. In many contexts trial courts decide disputed facts on a written record without any evidentiary hearing.

Halverson also involved undisputed evidence of juror misconduct and provides no support for Cutuk's position. Cutuk cites no authority holding that a trial court abused its discretion by resolving factual issues relating to a motion for a new trial without an evidentiary hearing.

## CONCLUSION

The court correctly resolved all doubts about the demonstrated juror misconduct in favor of granting a new trial. It did not abuse its discretion by

---

[26] 25 Wash. 405, 413, 65 P. 776 (1901).
[27] 82 Wn.2d 746, 752, 513 P.2d 827 (1973).

resolving the request for a new trial without an evidentiary hearing after receiving conflicting evidence of misconduct. We affirm.

Leach, C.J.

WE CONCUR:

Cox, J.

Dwyer, J.