[No. 4061-5-III. Division Three. November 19, 1981.]

JAMES R. TATUM, ET AL, *Respondents,* v. R & R CABLE, INC., ET AL, *Appellants.*

*Brian Frederick* and *Frederick, Beckley & Cooper,* for appellants.

*John P. Gilreath* and *Dano, Cone, Fraser & Gilreath,* for respondents.

MUNSON, J.—The defendants, R & R Cable, Inc., Douglas W. Weis, Alan F. Weis and Prescott Telephone and Telegraph Company (hereinafter referred to as R & R), appeal from a judgment awarding treble damages for injury to trees on the Tatums' property, attorney's fees and costs. The issue is whether the holder of a utility easement may be held liable for treble damages when the easement holder deviates from the location of that easement without first obtaining permission of the landowner and damages trees and shrubs. We answer in the affirmative.

The Tatums owned a cabin on recreational property within Kittitas County. There was a 5–foot easement along each property border for installation and maintenance of utilities and drainage facilities. Underbrush and numerous tall fir trees were growing on the easement. On August 9, 1979, R & R was laying an underground cable across the Tatums' property to service other property owners. The cable contained a telephone line and a television cable. The path for installation, cleared by a bulldozer with an 8–foot blade, did not follow the easement. The company's owner, Mr. Weis, admitted in a letter to the Tatums that R & R did trespass onto the Tatums' property outside the bound-

aries of the easement. The court found that R & R had entered the Tatum property without the Tatums' consent or permission:

> using heavy equipment, driving over plaintiffs' drainfield, up their driveway and over small trees the plaintiffs had planted and in addition also through native trees and brush which provided sight and sound barriers to the plaintiffs from an adjacent highway and which native trees and brush added to the aesthetic qualities of the plaintiffs' property.

Further, the "defendant's actions were taken without the defendants checking with the office of Pineloch Sun to determine either boundaries to the property or the owners of the property."

There is evidence to substantiate trespass outside the bounds of the easement and in at least one place the area cleared was 17 feet in width. R & R sought to excuse its action on the basis that to have followed the exact location of the easement would have required it to take out and destroy more valuable trees than those destroyed in the path chosen. R & R argued it knew the plaintiffs would not want the more valuable trees destroyed, hence it chose the other path. The trial court rejected that reasoning and entered a conclusion of law that R & R had proceeded with a "reckless disregard of the plaintiffs' rights in relationship to their property, without checking with them and without knowing the actual boundaries of the actual easement and as such committed a willful trespass on the plaintiffs' property."

■ R & R does not seriously contend it did not commit a trespass upon the Tatums' property by deviating from the easement. Rather, R & R contends it substantially complied with the easement because it chose a less expensive route. In *Bowerman v. Inter–Ocean Tel. & Tel. Co.*, 121 App. Div. 22, 105 N.Y.S. 565 (1907), the court held that the landowner and the telephone company had agreed the telephone company could put its lines down a fence line. In fact, the company poles were 5 to 7 feet from the fence line.

The landowner admitted that he did not contemplate the company would replace his fence with its poles, and the court concluded there had been substantial compliance with their agreement. Here, the facts are distinguishable; the path chosen by the telephone company substantially deviates from the easement, both in terms of its location and in its width. There can be no other conclusion; there was a trespass.

██ R & R also contends the court erred in assessing damages based on restoration value. The Tatums called a nurseryman who submitted an estimate of $1,979.50 for the purchase of comparable trees and shrubs and the installation thereof. Some of the shrubbery destroyed consisted of vine maple. R & R contends this grows wild and in abundance in that part of Kittitas County, and could be procured and set in place at comparatively little cost. But R & R offered no evidence of labor costs, whereas the Tatums' expert testified it was not that simple to uproot native shrubbery and replant it successfully. The trial judge heard this testimony and observed the witnesses. It is within the purview of the trier of fact to decide conflicting evidence; we find no abuse of discretion.

██ Next, R & R assigns error to the granting of treble damages pursuant to RCW 64.12.030.[1] The statute is applicable to ornamental trees and shrubs as well as timber. *Butler v. Anderson,* 71 Wn.2d 60, 75–76, 426 P.2d 467 (1967); *Tronsrud v. Puget Sound Traction, Light & Power Co.,* 91 Wash. 660, 158 P. 348 (1916). Mitigation of treble damages is possible under RCW 64.12.040 where "the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which such tres-

---

[1]RCW 64.12.030:

"Whenever any person shall cut down, girdle or otherwise injure, or carry off any tree, timber or shrub on the land of another person, . . . without lawful authority, in an action by such person, village, town or city against the person committing such trespasses or any of them, if judgment be given for the plaintiff, it shall be given for treble the amount of damages claimed or assessed therefor, as the case may be."

pass was committed was his own . . ." However, the burden of proving mitigation is upon the one who caused the injury. *Ventoza v. Anderson,* 14 Wn. App. 882, 894, 545 P.2d 1219 (1976), and cases cited. Nor is it necessary to prove intent on the part of the trespasser. *Fredericksen v. Snohomish County,* 190 Wash. 323, 326, 67 P.2d 886, 111 A.L.R. 75 (1937). Here, there was evidence that permission was not obtained and no effort was made to ascertain the location of the easement. The purpose of the treble damage statute is to (1) punish a willful offender; (2) provide, by trebling the actual present damages, a rough measure for future damages; and (3) discourage persons from carelessly and intentionally removing another's shrubs or trees. *Guay v. Washington Natural Gas Co.,* 62 Wn.2d 473, 383 P.2d 296 (1963). The court's findings are supported by substantial evidence, the replacement value was within the evidence, and the trebling of the damages proper.[2]

R & R challenges findings of fact Nos. 4 through 10 as being unsupported by the record. We find sufficient support for those portions of the challenged findings that are critical to the determination herein. Those portions of the findings which are unsupported are insignificant.[3]

---

[2]There are two other measures of damages: stumpage value, and the before and after value of property, *Grays Harbor County v. Bay City Lumber Co.,* 47 Wn.2d 879, 289 P.2d 975 (1955); *Tronsrud v. Puget Sound Traction, Light & Power Co., supra;* and in some cases may include lost profits. *Pearce v. G.R. Kirk Co.,* 92 Wn.2d 869, 602 P.2d 357 (1979).

Mrs. Tatum estimated the market value of the property diminished $3,000 to $4,000; an owner may testify to the market value of their property before and after damage. *See Hertzog v. Star Logging Co.,* 73 Wash. 197, 131 P. 806 (1913). The purpose of damages is to return an injured party as nearly as possible to the condition in which it would have been had the wrong not occurred. The trial court believed restoration damages were the proper method; that is within the province of the trier of fact.

[3]For instance, the portion of finding of fact No. 4 stating it is a common practice in the area to install utility lines overhead is lacking in support, but has no importance in this decision.

While the parties make conflicting arguments as to whether a cable television company or its lines are within the definition of a public utility, we need not reach or determine that issue in this case.

Finally, the trial court awarded attorney's fees on the basis of RCW 4.84 after finding the Tatums offered to settle the matter shortly after the trespass for $235, and 3 weeks later for $545. However, in the prayer of the Tatums' complaint, they ask for judgment and relief:

> 1. For damages . . . for trespass, which damages will be proved at time of trial, and that said damages be tripled and the plaintiffs be awarded reasonable attorney's fees all pursuant to RCW 64.12.030.

RCW 64.12.030, relating to treble damages, does not include attorney's fees. While the offers made prior to trial were under $1,000, the Tatums' complaint does not set forth the amount of their damages, which at trial were proven to be $1,979.50.

We hold that the provisions of RCW 4.84.250, which at that point in time related to damages under $1,000, must be pleaded to put the defendants on notice of the fact that plaintiffs are seeking attorney's fees under that statute. The Tatums argue that the trial having begun May 2, 1980, an amendment to the statute raising the statutory amount to $3,000 was effective May 1, 1980. Thus plaintiffs' damages are within the amendment. We disagree. RCW 4.84-.250 was not pleaded and the prior offers of settlement tended to mislead R & R into believing the amounts claimed were under $1,000. It would have been reasonable to contemplate the attorney's fees would be no more than the damages. However, when the Tatums proceeded to show damages of nearly $2,000 and sought to treble the amount pursuant to RCW 64.12.030, which did not provide for attorney's fees, and then sought attorney's fees under RCW 4.84.250, there was inadequate notice to R & R. Thus, the portion of the judgment providing for attorney's fees is

reversed, attorney's fees are denied on appeal, and the judgment is affirmed in all other respects.

McINTURFF, C.J., and ROE, J., concur.

Reconsideration denied December 15, 1981.

Review denied by Supreme Court March 26, 1982.