[No. 13535-7-III. Division Three. July 11, 1995.]

DOUGLAS A. DOYLE, *Respondent*, v. JACK R. HICKS, *Appellant*.

*F. Lawrence Taylor, Jr.*, for appellant.
*John R. Nelson*, for respondent.

SWEENEY, A.C.J. — Jack R. Hicks bought a house in Spokane, Washington, in 1970. In 1976, he married Fernanda Arenas Chacon. Together they moved to Colombia, South America, in the late 1970s, where they remained until sometime in the late 1980s.

On May 23, 1977, Mr. Hicks and Ms. Chacon signed a community property agreement in which they agreed that all of their property was community property. That same day, Mr. Hicks quitclaimed the Spokane property to himself and his wife as community property. The deed, however, was not recorded. On May 24, they signed a deed

of trust to secure a loan from Metropolitan Mortgage and Securities Company on the Spokane property. The deed of trust was recorded in Spokane County on May 31.

In May 1978, Mr. Hicks prepared papers to evict a tenant from the Spokane property. Those papers included a power of attorney which authorized his son "to act in my behalf on all my business affairs". Mr. Hicks signed the document but the signature was not notarized. He enlisted the help of his son James in effecting the eviction.

On November 9, 1978, James attached a notary affidavit to the power of attorney. The notary affidavit was in Spanish. Purporting to act as his father's attorney in fact, he then sold the property to Joseph and Barbara Termini. The deed was recorded on November 14. Pioneer National Title Insurance Company insured the title. Douglas and Judith Doyle bought the house on December 12, 1989, from the Terminis' successors in interest.

Since April 1991, Mr. Hicks has filed five liens, three quitclaim deeds and one statutory warranty deed on the property. He filed a "Notice to Terminate Tenancy" and a claim against the Doyles for rent due. On November 20, 1992, the Doyles sued to quiet title to the property.

The court first denied the Doyles' summary judgment motion, but later on reconsideration granted the motion and quieted title to the property in the Doyles. Mr. Hicks appeals.

The question presented is whether the absence of actual notice of an adverse possession, to the record owners, through no fault of their own, tolls the statute of limitation for adverse possession. We hold that it does not and affirm the decision of the trial court. This is a case of first impression in this state.

Because this is a review from a summary judgment, we consider the evidence in a light most favorable to the nonmoving party. *Stephens v. Seattle*, 62 Wn. App. 140, 143, 813 P.2d 608, *review denied*, 118 Wn.2d 1004 (1991).

The court did not specify which statute of limitation it

relied upon. Nor did it set out specific grounds for granting summary judgment.

Mr. Hicks argues that there are a number of unresolved issues of fact which make summary judgment inappropriate: specifically, (1) whether his power of attorney was intended to authorize the transfer of title to real property, (2) whether it was ever valid under Washington law, and (3) whether the deed signed by Mr. Hicks' son started the running of the 10-year statute of limitation. His arguments focus on his good faith, his son's fraud and, generally, his lack of any notice of an adverse possession.

Adverse possession in this state focuses on the nature of the possession and not the thought process of the possessor or the record owner. *ITT Rayonier, Inc. v. Bell*, 112 Wn.2d 754, 761, 774 P.2d 6 (1989) (quoting William B. Stoebuck, *The Law of Adverse Possession in Washington*, 35 Wash. L. Rev. 53 (1960) (adverse possession revolves around the character of possession, not secret thoughts)).

RCW 4.16.020(1) provides for a 10-year statute of limitation "for the recovery of real property, or for the recovery of the possession thereof".[1] Mr. Hicks complains that the court erred in focusing only on the 10-year statute of limitation. His argument misapprehends the basic assumption underlying the doctrine of adverse possession.

In order to establish a claim of adverse possession, there must be possession that is: (1) open and notorious, (2) actual and uninterrupted, (3) exclusive, and (4) hostile. *Chaplin v. Sanders*, 100 Wn.2d 853, 857, 676 P.2d 431 (1984). Possession of the property with each of the necessary concurrent elements must exist for the statutorily prescribed period. *ITT Rayonier*, 112 Wn.2d at 757. The essence of

---

[1]The Doyles apparently do not rely upon RCW 7.28.050 which vests title if possession is actual, open and notorious for a period of seven consecutive years with connected title deducible of record from the state or the United States. Even a void deed is sufficient to start the running of the statute. *Northlake Marine Works, Inc. v. Seattle*, 70 Wn. App 491, 504-05, 857 P.2d 283 (1993). They and their successors in interest have been in possession of the property for the 10 years necessary to satisfy RCW 4.16.020(1).

adverse possession is just that—possession which is adverse. It therefore is not possession which must be within the knowledge of the record owner. It is possession which is adverse and contrary to the claims of the record owner. "The ultimate test is the exercise of dominion over the land in a manner consistent with actions a true owner would take". *Id.* at 759. Here, that exercise of dominion took the form of the Doyles' and their predecessors' in interest living in the house.

The court in *ITT Rayonier* identified a number of specific public policy concerns which also underlie the doctrine of adverse possession, none of which include consideration of the record owner: "that title to land should not long be in doubt, that society will benefit from someone's making use of land the owner leaves idle, and that third persons who come to regard the occupant as owner may be protected". *Id.* at 757 (quoting Stoebuck, 35 Wash. L. Rev. at 53).

At best, the showing here is that the Doyles and their predecessors in interest should have been on notice given the appearance of the power of attorney and the public record of the deed of trust by the Hickses in favor of Metropolitan Mortgage. That is not enough. The doctrine of adverse possession protects "both those who knowingly appropriated the land of others, and those who honestly held the property in the belief that it was their own". *ITT Rayonier*, 112 Wn.2d at 760. Again, it is the character of the possession, not the thought process of the possessor, which is at issue. *Id.* at 761 ("Since a man cannot by thoughts alone put himself in adverse possession, why should he be able to think himself out of it?" (quoting Stoebuck, 35 Wash. L. Rev. at 80)).

A hostility element of adverse possession requires only "that the claimant treat the land as his own as against the world throughout the statutory period. The nature of his possession will be determined solely on the basis of the manner in which he treats the property". *ITT Rayonier*, 112 Wn.2d at 761 (quoting *Chaplin*, at 860-61). Good faith

by an adverse possessor is no longer an issue. *Id.* at 761.

Courts in other states have come to the same conclusion. *See, e.g., Barfield v. Vickers*, 200 Ga. 279, 281, 36 S.E.2d 766, 768 (1946) (noting that the very object of the doctrine of prescription is to make a bad title good when the necessary requisites have been complied with, so that when an adverse possessor has held for the requisite period and his prescriptive title ripens, it extinguishes all other inconsistent titles and itself becomes the true title. " 'When a party claims adversely, it is not necessary for him to show that he went into possession bona fide, but the burden of showing fraud is upon the opposite party' " (quoting *Reynolds v. Smith*, 186 Ga. 838, 842, 199 S.E. 137 (1938)).

Mr. Hicks urges that the discovery rule should apply to the statute of limitation for adverse possession, but cites no authority for the proposition. We can find none and conclude it should not. The discovery rule applies to actions for tortious injury to real property founded on negligence concerning improvements to real property, RCW 4.16.310, and actions involving damage to real property arising out of construction on adjacent property, *Vern J. Oja & Assocs. v. Washington Park Towers, Inc.*, 89 Wn.2d 72, 569 P.2d 1141 (1977). *See also Orear v. International Paint Co.*, 59 Wn. App. 249, 256-57, 796 P.2d 759 (1990), *review denied*, 116 Wn.2d 1024 (1991), referring to *Allied Corp. v. Frola*, 730 F. Supp. 626, 631-32 (D.N.J. 1990) (cause of action for tortious injury to real property based on hazardous waste disposal does not accrue until litigant knows or reasonably should know that he or she has a cause of action) . The discovery rule does not apply to an action to recover real property.

While the discovery rule does apply to the three-year statute for fraud (RCW 4.16.080(4)), this suit involves a question of land ownership, not fraud. *Morgan v. Morgan*, 10 Wash. 99, 106, 38 P. 1054 (1894) (question of ownership is the test or distinguishing feature between actions to re-

cover real estate, to which the 10 years' limitation is applicable, and actions seeking to recover the same where the title has been parted with in consequence of the fraud of another party); *Sims v. Vandiver,* 504 So. 2d 250, 252 (Ala. 1987) ("[p]ossession is hostile when the possessor holds and claims property as his own, whether by mistake or willfully" (quoting *Reynolds v. Rutland,* 365 So. 2d 656, 658 (Ala. 1978))).

 There is authority in this state which would support the notice requirement suggested by Hicks. But in that case the character of the property played an important role in the court's decision. In *Murray v. Bousquet,* 154 Wash. 42, 48, 280 P. 935 (1929), the court noted that the owner of the land being claimed was an absentee landlord whose offices were in Chicago, Illinois. And the land "is wild country, broken, mountainous, very sparsely settled, and a small portion of it might be taken and held for years without any one knowing whether there was a trespass or not". *Id.* at 49. It therefore concluded that "[i]n asserting title by adverse possession to land of the character of that here involved, the element of notice is important". *Id.* at 49. The discovery rule does not apply to the statute of limitation for adverse possession.

Mr. Hicks argues that the discovery rule should apply— that he is entitled to some notice that title has been transferred before the statute starts to run. That notice was provided, however, by the open possession of the property in dispute and the three recorded transfers of title.

Mr. Hicks had neither constructive nor actual possession of this property. The Doyles and their predecessors did. And that is what is required.

Notice is provided by the nature of the possession, given the type of property at issue, not whether the owner has put himself in a position from which any occupancy would not be noticed.

Mr. Hicks urges that the three-year statute of limitation for fraud should apply. But there is no evidence of complicity on the part of the Doyles or any of their

predecessors in interest. At best, the showing is that, given the form of the power of attorney, they were or should have been put on notice that the conveyance was pursuant to questionable authority. Simply put, that is not enough. The suit here involved the Doyles as occupiers of property—not James, whose alleged fraud resulted in the transfer of the property in the first place.

The judgment of the trial court is affirmed.

MUNSON and SCHULTHEIS, JJ., concur.

Reconsideration denied August 21, 1995.

Review denied at 128 Wn.2d 1011 (1996).