[No. 19304-3-II.    Division Two.    September 5, 1997.]

RICHARD J. ALLYN, ET AL., *Appellants,* v. GORDON BOE, ET AL., *Respondents.*

*Keith L. Kessler, Bradley J. Moore, Garth L. Jones,* and *Stritmatter Kessler Whelan Withey,* for appellants.

*Jon E. Cushman* and *Cushman Raymond & Middleton, P.S.,* for respondents.

ARMSTRONG, J. — In this timber trespass action, the jury awarded damages for harvested trees in an amount more than double the value of the underlying property. The trial court ordered a new trial because of: (1) juror misconduct and (2) the court's failure to instruct the jury that damages could not exceed the underlying value of the property. The Allyns appeal. The defendants cross-appeal, contending that, because the discovery rule does not apply to timber trespass actions, the action is barred by the statute of limitations. Because a juror who conceals bias during voir dire commits misconduct, we hold that the trial court did not abuse its discretion in ordering a new trial on this ground. Furthermore, although we decline to adopt a rule that damages in a timber trespass cannot exceed the value of the underlying property, we hold that under the formula presented to the jury, the damages for lost trees must be reasonably related to the value of the land.

Because the trial court's ruling that damages cannot exceed the value of the land necessarily implies a finding that the damages awarded did not bear such a reasonable relationship, we find no abuse of discretion on this ground either. Finally, we hold that the discovery rule applies to timber trespass actions and, therefore, the case was timely filed.

## FACTS

The Allyn family has owned 10 acres of wooded, undeveloped property in Thurston County for more than 85 years, purposely leaving the land undeveloped. Richard and Winifred Allyn, the current owners, had planned to eventually build a retirement cabin on a small portion of the land. They currently reside in Bellevue, Washington.

Gordon Boe and Myron Struck (hereinafter "Boe") began logging their adjoining land in July 1987. While logging, they cut down 283 trees from about two acres of the Allyns' land. Boe completed the logging by September 18, 1987.

Mr. Allyn visited his property on September 12, 1989, and saw that two acres had been logged. He was very upset and reported the theft to the Sheriff's. Office. Mr. Allyn suspected Boe because he saw logs on Boe's land and a neighbor told him that Boe had logged his own land in the summer of 1987. But when questioned by the police, Boe denied cutting the trees even though he knew from a survey in 1988 that he had cut some of the Allyns' trees.

Mr. Allyn then hired an attorney, a private investigator, a surveyor, and a timber expert to find out who had cut down his trees. In early October 1990, the timber expert matched a cut tree on Boe's land to a stump on the Allyns' land. Mr. Allyn then sued Boe on October 10, 1990, alleging timber trespass in violation of RCW 64.12.030, and seeking damages for the trespass and for emotional distress.

The defendants sought a dismissal, arguing that the

three-year statute of limitations had run. The trial court denied the motion, finding that, under the discovery rule, the statute of limitations had not begun to run until the Allyns learned of all the elements of the claim, including who had cut the trees. The court then directed a verdict on liability in favor of the Allyns.

Boe moved to exclude all evidence that the value of the cut timber exceeded the fair market value of the entire 10 acres of land, arguing that, as a matter of law, the damages in a timber trespass case cannot exceed the fair market value of the underlying parcel of land. The trial court denied the motion.

Molly Beck, an arborist expert for the Allyns, testified on the value of the cut trees. In evaluating the loss, she rejected the cost of cure and replacement value methods because she believed these would yield an exorbitant value. Beck estimated the cost of replanting the trees, some more than two feet in diameter, in excess of $400,000. Beck also rejected the stumpage value method, used when evaluating timber as a commodity, because the Allyns were not growing the trees for the timber market.

Instead, Beck used the basic formula method. Under this method, the arborist determines the cost per unit of trunk cross-sectional area to purchase and plant an available replacement tree. Here, Beck used $27 per square inch. The total square inches of the cut tree's trunk can then be determined and the value of the tree calculated. Beck gave the example of a 21-inch diameter Douglas fir with a total calculated value of $9,342. This total is then reduced by factors for the location, condition, and species of the tree, resulting in a value of $420 for the example tree. Beck calculated the total value of all the trees cut to be $84,597. She determined this figure without regard to the appraised market value of the Allyns' land.

Beck conceded that the arborist's manual she used in her calculations stated that "[t]he appraised value of a tree should usually be reasonable in relation to the value of the property in which it is situated." The manual also

suggested that such value could range from seven to fifteen percent of the total value of the land. But Beck disagreed and testified that a tree's value can exceed the value of the property on which it stands.

Struck testified that the logs were sold for $27,269. According to Struck, about two-thirds of the trees sold came from the Allyns' 2 acres, while the other third came from the defendants' 15 acres. Donald Taylor, a real estate appraiser, testified that he appraised the Allyns' land with the trees still standing at $35,000. Another appraiser had valued the land at $27,500. A forestry management expert testified that the stumpage value of the trees was $16,355.

The jury awarded the Allyns $75,000 for the loss of trees and $25,000 for emotional distress. The jury also found that Boe had willfully trespassed on the Allyns' land.[1] Boe moved for a new trial. In support of the motion, Boe obtained affidavits from several jurors alleging that the following juror misconduct had occurred during deliberations: (1) one juror, a realtor, said that she could get $125,000 for the Allyns' land, that she knew Taylor, the defendant's real estate expert, and that he would testify to anything; (2) another juror, a retired logger, said that timber trespass damages had to be tripled and the jury then tripled its damage award. During voir dire, the realtor-juror had said that she knew Taylor, but when asked if this would prevent her from being impartial, she said nothing.

Boe also renewed his argument that the court should have instructed the jury that timber trespass damages could not exceed the value of the underlying property. Finding the result an "injustice," the trial judge ordered a new trial, concluding that he should have limited damages to no more than the fair market value of the property. The judge also ruled that the realtor juror's statements amounted to misconduct and formed an alternative basis for the new trial. The trial judge, however, ruled

---

[1]Because of this finding, the trial judge would have been required to treble the $75,000 award to $225,000. RCW 64.12.030.

that the statements of the retired logger juror inhered in the verdict and were not juror misconduct. The Allyns appealed and Boe cross-appealed.

## ANALYSIS

### A. Order Granting a New Trial

The granting of a new trial motion is a matter within the discretion of the trial court, and its ruling will not be disturbed absent a showing of clear abuse of that discretion. *Kramer v. J.I. Case Mfg. Co.,* 62 Wn. App. 544, 561, 815 P.2d 798 (1991). When such an order, however, is predicated upon rulings of law, no element of discretion is present. *Robinson v. Safeway Stores, Inc.,* 113 Wn.2d 154, 158, 776 P.2d 676 (1989).

#### 1. Juror Misconduct

A juror's misrepresentation or failure to speak when called upon during voir dire regarding a material fact can amount to juror misconduct. *Robinson,* 113 Wn.2d at 158.

> [W]hen there is strong evidence to the effect that a juror was biased *when he entered upon the case* and swore falsely on *voir dire,* concealing his bias, the trial court will not abuse its discretion in granting a motion for new trial. The misconduct consists of his deception of the court and counsel as to his incompetence as an impartial juror.

*Robinson,* 113 Wn.2d at 158 (quoting *Nelson v. Placanica,* 33 Wn.2d 523, 528-29, 206 P.2d 296 (1949)). Furthermore, a juror who brings to the jury deliberations information outside the record commits misconduct. *Richards v. Overlake Hosp. Med. Ctr.,* 59 Wn. App. 266, 270, 796 P.2d 737 (1990); *see also Halverson v. Anderson,* 82 Wn.2d 746, 752, 513 P.2d 827 (1973).

The court must make an objective inquiry into whether the extraneous evidence *could* have affected the jury's verdict, not a subjective inquiry into the *actual* effect. *Richards,* 59 Wn. App. at 273. Whether such miscon-

duct occurred and whether it was prejudicial are matters within the sound discretion of the trial court, who saw both the witnesses and the trial proceedings, and had in mind the evidence. *Richards*, 59 Wn. App. at 271-72. Any doubt as to whether the misconduct affected the verdict must be resolved against the verdict. *Richards*, 59 Wn. App. at 273.

In *Robinson*, the court held that a juror's failure to disclose his bias against California residents, and his perception of their role in the legal process, constituted juror misconduct because the plaintiff was from California. *Robinson*, 113 Wn.2d at 158-59. In *Allison v. Department of Labor & Indus.*, 66 Wn.2d 263, 265, 401 P.2d 982 (1965), the court held that the trial court should have granted a new trial when a juror also failed to disclose bias during voir dire. The juror stated that, although he had appealed his workers' compensation claim three times, he could be fair and impartial. *Allison*, 66 Wn.2d at 264-65. Juror affidavits, however, established that during deliberations the juror said "anyone claiming against the state should get everything they can." *Allison*, 66 Wn.2d at 265.

Here, the juror said that she knew Taylor, but then said nothing when asked if that would prevent her from giving both sides a fair trial. During deliberations, however, the juror then attacked Taylor's credibility: "he would testify to anything." This attack was not based on what she had heard or seen in the courtroom, but rather on information outside the trial record: she "knew him." Furthermore, the statement dealt with a material issue — the credibility of an expert on the land's value. Boe maintained throughout the trial that any claimed loss in excess of the value of the underlying property would not be reasonable. If the jury accepted the realtor juror's opinion that the property was worth $125,000,[2] rather than $35,000, an award of $75,000 would conform with Boe's argument. Although the juror's statement may not be as serious as those found

---

[2]The juror's opinion as to the land's value inheres in the verdict. *See Richards*, 59 Wn. App. at 274.

in other cases, the trial court ruled that the statement constituted juror misconduct and, therefore, was grounds for a new trial. Because we cannot conclude that the trial court abused its discretion, we affirm the granting of a new trial based on juror misconduct. *See Richards,* 59 Wn. App. at 271.

Citing *Richards,* the dissent concludes that Boe failed "to make the strong and affirmative showing of juror misconduct required to support a new trial." Dissenting op. at 739. In *Richards,* the alleged misconduct occurred when a juror, based on her medical knowledge, suggested that a mother's flu caused a child's birth defects. The trial court denied the plaintiff's motion for new trial. Finding no abuse of discretion, the Court of Appeals affirmed. The court concluded, "[U]ltimately the determination of whether juror misconduct in interjecting evidence outside of the record affected the verdict is within the discretion of the trial court." *Richards,* 59 Wn. App. at 272. Here, the trial court found misconduct that affected the verdict—a decision within its sound discretion. We cannot say its decision was "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Richards,* 59 Wn. App. at 271 (citing *State ex. rel. Carroll Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

The dissent also concludes that the realtor-juror did not conceal her opinion of Taylor because she was asked vague and open-ended questions. Dissenting op. at 739. But the Allyns never claimed on appeal that the voir dire questions were vague. They asserted only that the jury's reasoning inhered in the verdict. In general, we will not entertain arguments not presented by the parties. *See In re F.D. Processing, Inc.,* 119 Wn.2d 452, 455-56, 832 P.2d 1303 (1992).

Boe also urges us to find juror misconduct and affirm because of the retired logger juror's statement that timber trespass damages had to be tripled, which caused the jury to triple its damage award. But the thought processes of jurors inhere in the verdict and cannot be

used to impeach it. *Johnson v. Carbon,* 63 Wn. App. 294, 301, 818 P.2d 603 (1991); *Ayers v. Johnson & Johnson Baby Prods. Co.,* 117 Wn.2d 747, 768, 818 P.2d 1337 (1991). Even a jury's failure to follow instructions or a misunderstanding of the instructions inheres in the verdict. *Ayers,* 117 Wn.2d at 769; *Gardner v. Malone,* 60 Wn.2d 836, 841, 376 P.2d 651 (1962); *Hosner v. Olympia Shingle Co.,* 128 Wash. 152, 155, 222 P. 466 (1924) (failure to read instructions inheres). Juror affidavits, therefore, may not be used to challenge the thought processes involved in reaching a verdict. *Ayers,* 117 Wn.2d at 768. Accordingly, the trial court properly denied a new trial on this alternative basis.

2. Limitation on Timber Trespass Damages

██ The Allyns contend also that the trial court erred in ruling that it should have limited timber trespass damages, before any statutory trebling, to the fair market value of the property. A landowner suffering a timber trespass may pursue either common-law remedies or statutory remedies.[3] *Henriksen v. Lyons,* 33 Wn. App. 123, 127, 652 P.2d 18 (1982). At common law, damages are measured by the difference in land value before and after the trespass. *Henriksen,* 33 Wn. App. at 127. Under the statute, the measure of damages may vary. When the damage is to "timber," the landowner recovers the "stumpage value" of the trees, together with other damages that are the normal consequence of a logging operation. *Sherrell v. Selfors,* 73 Wn. App. 596, 602, 871 P.2d 168 (1994).

When the damage is to a "productive tree," such as a fruit tree, the proper measure is the tree's production value. *Sparks v. Douglas County,* 39 Wn. App. 714, 720, 695 P.2d 588 (1985). Lost profits may be recovered for injury to Christmas trees intended to be sold at market. *Pearce v. G.R. Kirk Co.,* 92 Wn.2d 869, 873-74, 602 P.2d 357 (1979). For ornamental greenery on residential or recreational property, the landowner can recover restoration and replacement costs. *Birchler v. Castello Land Co.,*

---

[3]RCW 64.12.030 allows treble damages for a willful trespass.

*Inc.,* 81 Wn. App. 603, 607, 915 P.2d 564 (1996), *aff'd,* 133 Wn.2d 106 (1997); *Tatum v. R&R Cable, Inc.,* 30 Wn. App. 580, 583, 636 P.2d 508 (1981), *overruled on other grounds by Beckmann v. Spokane Transit Auth.,* 107 Wn.2d 785, 733 P.2d 960 (1987). Finally, the damages may be based on the difference in the value of the land before and after the cutting. *Sherrell,* 73 Wn. App. at 602.

■ None of these cases, however, addresses the question whether damages under these various methods may exceed the underlying value of the property. THE RESTATEMENT ON TORTS permits the recovery of restoration costs in excess of a property's value if "there is a reason personal to the owner for restoring the original condition." RESTATEMENT (SECOND) OF TORTS § 929 cmt. b (1965); *see also Heninger v. Dunn,* 101 Cal. App. 3d 863, 162 Cal. Rptr. 104, 107-08 (1980). Other jurisdictions also do not limit damages to the value of the underlying property. In *Samson Constr. Co. v. Brusowankin,* 147 A.2d 430, 218 Md. 458 (1958), Maryland's highest court allowed reasonable restoration costs, even though greater than the land's value, if the jury found the plaintiffs had personal reasons for restoring the land as nearly as possible to its original condition. *Samson,* 147 A.2d at 437.

The Supreme Courts of Colorado and Alaska have adopted similar rules. *See Weld County Bd. of County Comm'rs v. Slovek,* 723 P.2d 1309, 1317 (Colo. 1986); *G&A Contractors, Inc. v. Alaska Greenhouses, Inc.,* 517 P.2d 1379, 1385-87 (Alaska 1974). In *Weld,* the Colorado court held that restoration costs, greater than the original value of the property but not unreasonable in relation to that value, were within the trial court's discretion if payment of the market value would not adequately compensate the owner for some personal reason. *Weld,* 723 P.2d at 1317. The Alaska court ruled that the trial court did not err in awarding reasonable restoration costs, even though these exceeded the value of the land. *G&A,* 517 P.2d at 1385-87.

Here, Mr. Allyn testified to the great attachment that he and his family had to the land and its trees. The land

had been left undeveloped for more than 85 years by the Allyn family. He also testified that during the Great Depression, when his family lived on the land in a small building, they refused to cut down any of the trees for firewood. Moreover, Mr. Allyn and his wife intended to retire on the land, preserving the trees. No evidence suggested that the Allyns intended to commercially harvest the trees. Finally, Mr. Allyn testified that he was very upset when he first saw the logged land. The Allyns, therefore, demonstrated personal reasons for restoring the land to its original condition. Accordingly, we hold here the jury could award damages, before any statutory trebling, in excess of the value of the underlying land.

But, although timber trespass damages are not limited to the fair market value of the underlying property, such damages must still be reasonable in relation to the property value. *See Weld,* 723 P.2d at 1317; *G&A,* 517 P.2d at 1385-87. "Courts have stressed that only *reasonable* costs of replacing destroyed trees with identical or substantially similar trees may be recovered." *Heninger,* 162 Cal. Rptr. at 108. Proposed replacement costs may be unreasonable in relation to either the damage to the land or the land's value before the trespass. *Heninger,* 162 Cal. Rptr. at 108-09.

The facts in *Heninger* are very similar to the present case. Heninger owned forested mountain land that he valued for its natural beauty. *Heninger,* 162 Cal. Rptr. at 106, 109. He intended to keep the land, valued at $179,000, unimproved. *Heninger,* 162 Cal. Rptr. at 106, 109. The defendants, however, bulldozed a road on the land, killing or damaging 225 trees and destroying the underbrush. *Heninger,* 162 Cal. Rptr at 106. Substantially identical restoration, including the transplanting of a large number of mature trees, cost approximately $241,000. *Heninger,* 162 Cal. Rptr. at 109. Although noting that restoration costs may exceed the value of the underlying property, the court held that this was a manifestly unreasonable expense in relation to the land's value before the trespass. *Heninger,* 162 Cal. Rptr. at 109.

Here, Taylor, the real estate appraiser, appraised the Allyns' full 10 acres with the trees still standing at $35,000. Other evidence suggested a possibly lower value — $27,500. Beck, however, testified that, under the basic formula method, the loss of trees from two acres exceeded $84,000.[4] The $75,000 damage award, before trebling, for trees cut down from only 2 out of a total of 10 acres, therefore, was more than double the highest appraised value for the entire 10 acres with the trees still standing.

In addition, the jury awarded $25,000 for emotional distress. Such damages are allowed because "they are unique to the values and sensitivities of the property owner" and "reflect the emotional value a particular person has attached to the property." *Birchler,* 81 Wn. App. at 608. This rationale is similar to the rationale Beck used in choosing the basic formula, i.e., because the landowner intended to keep the trees "for sentimental, historic, functional, or aesthetic value," and his "feelings for their aesthetic and functional attributes." Because the parties have not raised the question, we do not decide whether the emotional distress damages award duplicated any part of the award for loss of the trees calculated on the basic value formula. But the close similarity of purpose of the two awards further supports the trial judge's ruling that the total award was not reasonable and amounted to an unjust result.

In conclusion, we hold that although timber trespass damages may exceed the value of the underlying property in the proper case, the damages must still be reasonable in relation to the value of the property. *Heninger,* 162 Cal. Rptr. at 109; see also *Samson,* 147 A.2d at 437; *Weld,* 723 P.2d at 1317; *G&A,* 517 P.2d at 1385-87. Accordingly, we find no abuse of discretion as to the trial court's alternative ground for granting a new trial.

---

[4]The evidence suggested the trees from the two acres were the most valuable ones on the land.

## CROSS APPEAL ISSUES
### B. Discovery Rule in Timber Trespass Cases

In his cross-appeal, Boe contends that the trial court should have dismissed the action because it was not filed within the three-year statute of limitations. RCW 4.16.080(1). He further maintains that the discovery rule does not apply to toll the statute in timber trespass cases.

A cause of action generally accrues at the time the act or omission occurs. *In re Estates of Hibbard*, 118 Wn.2d 737, 744, 826 P.2d 690 (1992). In some cases, however, injured parties do not, or cannot, know they have been injured when the injury occurs. Where harm has been sustained, but the plaintiff is unaware of it, a literal application of the statute of limitations may result in a grave injustice. *Gazija v. Nicholas Jerns Co.*, 86 Wn.2d 215, 220, 543 P.2d 338 (1975). The discovery rule is designed to prevent such injustice. *Gazija*, 86 Wn.2d at 220.

Under the discovery .rule, the cause of action accrues, and the statute of limitation begins to run, when the plaintiff discovers or reasonably could have discovered all the essential elements of the cause of action. *Hibbard*, 118 Wn.2d at 744; *United States Oil & Ref. Co. v. State Department of Ecology*, 96 Wn.2d 85, 92, 633 P.2d 1329 (1981). And the statute does not begin to run until the plaintiff knows or with reasonable diligence should know that the defendant was the responsible party. *Orear v. International Paint Co.*, 59 Wn. App. 249, 257, 796 P.2d 759 (1990).

The Washington Supreme Court adopted the discovery rule in a medical malpractice action, *Ruth v. Dight*, 75 Wn.2d 660, 453 P.2d 631 (1969). Although the rule has been extended only to "certain torts," *Bowles v. Washington Dep't of Retirement Sys.*, 121 Wn.2d 52, 80, 847 P.2d 440 (1993), it has been applied where the defendant has concealed information from the plaintiff. *Kittinger v. Boeing Co.*, 21 Wn. App. 484, 488, 585 P.2d 812 (1978).

In *Kundahl v. Barnett,* 5 Wn. App. 227, 231, 486 P.2d 1164, *review denied,* 80 Wn.2d 1001 (1971), the court applied the discovery rule to surveyor malpractice where there was encroachment on neighboring land due to a faulty survey. The discovery rule also applies to negligently caused injury to real property and to damage to real property arising out of construction on adjacent property. *Doyle v. Hicks,* 78 Wn. App. 538, 544, 897 P.2d 420 (1995), *review denied,* 128 Wn.2d 1011 (1996). The decision to extend the discovery rule to a cause of action is a matter of judicial policy. *Denny's Restaurants, Inc. v. Security Union Title Ins. Co.,* 71 Wn. App. 194, 216, 859 P.2d 619 (1993).

We hold that the discovery rule applies to timber trespass actions at least where, as here, the defendant conceals his wrongdoing. *See Kittinger,* 21 Wn. App. at 488. Boe knew in 1988, from the survey, that he had trespassed on the Allyns' property and cut down their trees. But he did not tell the Allyns of the trespass. Furthermore, when confronted by the sheriff, Boe denied cutting the trees. Mr. Allyn was forced to hire an investigator and timber expert to learn who had cut his trees. Thus, although Mr. Allyn learned of the trespass within the three-year period of the statute, he was frustrated in identifying the trespasser by Boe's denials and concealment. Under these circumstances, fairness compels the application of the discovery rule. Moreover, we see no meaningful distinction between this timber trespass action and the other cases of tortious injury to real property where the discovery rule has been applied. *See, e.g., Kundahl,* 5 Wn. App. at 231 (discovery rule applies to surveyor malpractice where encroachment on neighboring land was due to a faulty survey); *Doyle,* 78 Wn. App. at 544 (discovery rule applies to negligently caused injury to real property and to damage to real property arising out of construction on adjacent property). Accordingly, the statute of limitations on the Allyns' timber trespass cause of action against Boe did not begin to run until October

1990, when Mr. Allyn learned that Boe had logged his property. The action, therefore, was timely filed.

## C. Emotional Distress Damages

Boe then argues that the trial court erred in permitting the Allyns to recover emotional distress damages. Division One of this court recently held that, because extraordinary losses in a timber trespass action are recoverable if properly segregated, a landowner can recover for emotional distress damages. *Birchler,* 81 Wn. App. at 607. The court found that such damages cannot be fairly characterized as "a customary by-product" of removing vegetation because the damages are unique to the values and sensitivities of the property owner. *Birchler,* 81 Wn. App. at 608. Because trees, timber, or vegetation may have little market value, but great emotional value to the landowner, emotional distress damages provide compensation for the personal injury to the landowner. *Birchler,* 81 Wn. App. at 608-09. Accordingly, the trial court properly permitted the Allyns to recover emotional distress damages.

## D. Expert Testimony and Verdict Form

Boe then argues that the trial court erred in admitting the expert testimony of Beck. The trial court has discretion on whether to admit expert testimony; its discretion will be overturned only for an abuse of that discretion. *State v. Swan,* 114 Wn.2d 613, 655, 790 P.2d 610 (1990), *cert. denied,* 498 U.S. 1046 (1991). Beck testified to her qualifications; Boe does not challenge these qualifications. Accordingly, the trial court did not abuse its discretion in admitting Beck's testimony.

Finally, Boe's contentions regarding the special verdict form and its emotion distress damages portion are without merit.

We affirm.

BRIDGEWATER, J., concurs.

HOUGHTON, C.J. (dissenting) — I respectfully dissent. The record here does not support the majority's conclusion that a new trial was warranted based upon juror misconduct. During voir dire, the realtor-juror indicated that she knew Taylor. She was then asked if her knowledge and familiarity with Taylor prevent her from "giving either party a fair trial." She indicated that it would not.

Generally courts are reluctant to disturb a jury's verdict absent a strong and affirmative showing of juror misconduct. *See, e.g., Richards v. Overlake Hosp. Med. Ctr.,* 59 Wn. App. 266, 271, 796 P.2d 737 (1990). A juror's responses during voir dire may amount to misconduct requiring a new trial where the juror "give[s] a false answer on a material matter during voir dire examination that conceals information properly requested by a litigant." *Robinson v. Safeway Stores, Inc.,* 113 Wn.2d 154, 160, 776 P.2d 676 (1989) (quoting *Smith v. Kent,* 11 Wn. App. 439, 444, 523 P.2d 446 (1974)).

Here the juror was asked whether her knowledge of Taylor would prevent her from giving the parties a "fair trial." Because this question was vague and open-ended, her response cannot be characterized as a false answer. Further, because the question was too vague to effectively inquire into her opinions regarding Taylor's reputation as an appraiser, her response cannot be considered as concealing information properly requested by a litigant. Boe had the opportunity to ask more pointed questions, but declined to do so. For these reasons, I believe that Boe fails to make the strong and affirmative showing of juror misconduct required to support a new trial order. I would reverse the trial court and reinstate the jury's verdict.

I would also decline to limit timber trespass damages as the majority has. In concluding that timber trespass damages are not limited by the value of the land, the majority concedes that trees have value beyond that of a mere com-

modity. But the rule adopted here arbitrarily limits timber trespass damages by requiring that they be reasonably related to the fair market value of the land.

In Washington, a plaintiff may bring an action for timber trespass under RCW 64.12.030 where the defendant unlawfully removes ornamental trees and shrubs from the plaintiff's property. *Tatum v. R&R Cable, Inc.,* 30 Wn. App. 580, 583, 636 P.2d 508 (1981), *overruled on other grounds, Beckmann v. Spokane Transit Auth.,* 107 Wn.2d 785, 790, 733 P.2d 960 (1987). In such cases the appropriate measure of damages is the cost of replacement and restoration. *Birchler v. Castello Land Co., Inc.,* 81 Wn. App. 603, 607, 915 P.2d 564 (1996), *aff'd,* 133 Wn.2d 106 (1997); *Sherrell v. Selfors,* 73 Wn. App. 596, 603, 871 P.2d 168 (1994); *Tatum,* 30 Wn. App. at 583.

Here, calculating replacement and restoration costs is within the province of the jury as the finder of fact. *Selfors,* 73 Wn. App. at 603; *Tatum,* 30 Wn. App. at 583-84. There was evidence before the jury that the actual cost of replacement was well in excess of $75,000. Further, there was evidence that, under the basic formula method, the total value of the removed trees was $84,597. Because the jury's award of $75,000 is supported by substantial evidence, I would affirm.

The majority also relies upon the jury's award of $25,000 for emotional damages to support its conclusion that the "total award" is unreasonably excessive in relation to the land. A plaintiff in a timber trespass action may recover for emotional distress in addition to statutory damages. *Birchler,* 81 Wn. App. at 607-09. No case cited by the majority supports the proposition that emotional damages are in any way limited by the value of the land. Because they are properly segregated here, I believe that it is improper to aggregate emotional and statutory damages as the majority has here.

Review denied at 134 Wn.2d 1020 (1998).